## 7546

### ALDERMAN v. WELLS, TREASURER.

1. Constitutional Law.—The income tax acts, Code, 1902, sections 325 to 331, with amendments, do not deny to the taxpayer the equal protection of the law or due process of law.
2. Ibid.—Ibid.—The General Assembly is authorized by section 1 of article X of the Constitution to provide a graduated tax on incomes and is empowered to adopt its own methods and ratio of graduation with which the Courts have nothing to do. The exercise of such graduation is necessarily arbitrary.
3. Income Tax.—The Legislature may lay an income tax on the income of a citizen derived wholly from dividends paid on stock in corporations which have already paid the State taxes on their franchises and property.
4. The income tax is levied annually and is applied to the expenses of the State for the year collected, and the Courts must assume the Legislature takes it into consideration in estimating the sources of income of the State.
5. Constitutional Law.—The income tax act does not violate that provision of the Constitution requiring that the law levying a tax shall distinctly state the object of the same.

6. THE INCOME TAX. is a special tax and is included in that proviso to the annual supply bills authorizing tax officers to collect such special taxes as are authorized by resolution or act of the Legislature, and the act has not been repealed by any subsequent supply act or otherwise.

Before WATTS, J., Clarendon, December, 1908. Affirmed.

Action by D. W. Alderman against L. L. Wells treasurer of Clarendon County. From judgment dismissing complaint, plaintiff appeals.

*Mr. Charlton DuRant* and *H. E. Davis,* for appellant, cite: *As to due process of law and the equal protection of law:* 27 Ency., 590; 13 Fed., 722; 18 Fed., 385; 118 U. S., 394; 115 U. S., 337; 134 U. S., 232; 165 U. S., 150; 82 Fed., 258; 67 Am. St. R., 579; 64 Am. St. R., 600; 183 U. S., 79; 78 Am. St. R., 29; 89 Am. St. R., 797; 207 U. S., 20; 101 U. S., 153, 143; 100 U. S., 539; 113 Am. St. R., 661; 75 S. C., 62; 66 S. C., 37; 56 S. C., 516; 47 L. R. A., 68; 48 L. R. A., 238; 57 Am. R., 516; 102 Am. St. R., 914; 19 Fed., 398; 24 Fed., 202; 88 Fed., 350; 85 Fed., 302; 6 S. C., 1; 76 S. C., 21: *As to double taxation:* 21 Fed., 539; 22 Fed., 602; 84 Am. St. R., 589; 67 Am. St. R., 224; 27 Ency., 607. *Discrimination:* 157 U. S., 429. *Statute does not state object of tax:* 62 S. C., 34. *This is a general tax:* 4 Words Phrases, 3079, 6592; 59 Md., 378; 25 Pac., 73; 147 U. S., 190; 60 N. E., 870; 82 N. W. 336; 36 Atl., 173; 31 S. W., 52; 25 Mo., 258; 20 Fla.; 552; 59 N. W., 932; 67 Pac., 68; 32 L. R. A., 157; 22 Mo. App., 8; 27 Ency., 581. *This act has been repealed by supply acts:* 68 S. C., 411.

*Attorney General J. Fraser Lyon* and *Assistant Attorney General M. P. DeBruhl, contra.* · *Mr. DeBruhl* cites: *As to arbitrary discrimination:* 43 Mo., 491; 1 Cool. on Tax, 30; 1 Desty on Tax, 202; 43 Mo., 480; 30 L. R. A., 912. *Graduation is equal and uniform:* 63 S. C., 429; 43 Mo., 491;

1 Cool. on Tax, 418; 2 Id., 1138-40. *As to equal protection of law:* 63 S. C., 429; 78 S. C., 211. *Income from stocks is taxable:* 1 Desty on Tax, 202; 6 Ba., 553; 92 Am. R., 532; 71 Mich., 21. *As to due process of law:* 63 S. C., 429; 96. U. S., 97; 115 U. S., 321; 111 U. S., 701; 122 U. S., 154. *As to double taxation:* 71 Mich., 21; 3 Strob., 395; 46 Penn., 31; 60 Ga., 93; 54 Ga., 330.

April 12, 1910. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The plaintiff paid his income tax for the year 1905 under protest, and brought this action to recover it back under the provisions of section 413 of the Code of 1902.

He alleges that the act which authorized the levy and collection of the tax is unconstitutional because it denies to him the equal protection of the laws, and due process of law in that:

1. Incomes under twenty-five hundred dollars are not taxed and incomes over said amount are taxed, this being an arbitrary and unreasonable classification and not being founded on the said income supporting a family, or being used in any particular manner or by any class of persons.

2. That incomes less than five thousand dollars pay a tax of one per cent. and incomes from ten thousand to fifteen thousand dollars pay a tax of two and one-half per cent.

3. That said tax includes all natural persons and excludes all corporations.

4. That nearly all of plaintiff's income for the one year for which said tax was assessed was derived from dividends received from stock in corporations chartered under the laws of the State of South Carolina, and the said corporations had been required to pay the franchise tax in the proportion to the amount of their capital stock, as required by the laws of the State of South Carolina, and in addition, the said corporations had been taxed and required to pay taxes

upon their property for usual State, county and municipal purposes, and the same amounts to an unreasonable discrimination against and a tax upon the stockholders of corporations.

5. In that no tax is assessed against the increase in values of property during the year or from property sold at greater than cost price or for any increase in market values of stocks, bonds or other investments, this being an unreasonable and arbitrary classification of property for taxation.

6. In that no deduction is made for any interest or other like expenditures which reduce the net income and are not exempt in said act as expenses of carrying on business.

7. In that no deduction is made for taxes or other assessments paid the government, the said income tax act thereby being a tax on other taxes and subjecting some property to double and treble taxation.

8. In that no deduction is allowed for losses without regard to the nature or causes of same.

He also alleges that it violates sections 2 and 3 of article X of the Constitution of this State, and that it was repealed by section 5 of the supply act of 1905.

To a proper understanding of the questions involved, it will be necessary to set out the first two sections of the act which is incorporated in sections 325 to 331 of the Code of 1902.

Section 325. "There shall be annually assessed, levied and collected upon the gains, gross profits and income received during the preceding calendar year by every citizen of this State, whether such gains, profits or income be derived from any kind of property, rents, interests, dividends, or salaries, or from any profession, trade, employment or vocation carried on in this State, or from any other source whatever, a tax of one per centum on the amount so derived over and above $2,500 and up to $5,000; one and one-half per centum on $5,000 and over, up to $7,500; two per centum on $7,500 and over, up to $10,000; two and one-half per

centum on $10,000 and over, up to $15,000; three per centum on $15,000 and over; and a like tax shall be assessed, levied and collected annually upon the gains, profits and income from all property owned, and every business, trade or profession carried on in this State by persons residing without this State, excepting such corporations as are hereinafter excepted; *Provided,* That in estimating the gains, profits and income there shall not be included interest upon such bonds or securities of this State, or of the United States, the principal and interest of which are, by the law of their issue, exempt from taxation.

Section 326. "In computing incomes, the necessary expenses actually incurred in carrying on any business, occupation or profession, not including remuneration to the taxpayer for personal supervision or the support and maintenance of his or her family, shall be deducted from the gross income or revenue; and the word 'income,' as used in this article, shall be deemed and taken to mean 'gross profits': *Provided,* That no deduction shall be made or allowed for any amount paid out or contracted for permanent improvements or betterment made to increase the value of any property or estate, or for the increase of capital, capital stock or assets."

Section 327 defines the words "citizen" and "person," as used in the act, as including all natural persons, copartners and members of any incorporated association, and as excluding all corporations, chartered by the laws of the United States, or of this or any other State. Section 328 provides that the tax shall be levied and collected at the same time, and in the same manner and by the same officers, as other taxes, and that they shall be paid into the State treasury as other general State taxes.

Sections 329 and 330 provide for the time and manner of making returns, and penalties for failure to make returns, and for making wilfully fraudulent returns, and, also, that "the tax and the additions thereto as a penalty are to be

assessed and collected in the manner provided for in the case of failure to make returns or lists of personal property.''

Section 331 is as follows: "In every respect not herein specified, the returns for and the levy and collection of the tax provided in this article shall be subject to all the provisions of law relative to the assessment and collection of takes on personal property."

As one of the objections to the act is, that it takes plaintiff's property "without due process of law," we state briefly, but substantially, the method of procedure, in ordinary cases, required by the statutes of this ·State, relative to the assessment and collection of taxes on personal property, which, by the terms· of the income tax act, are made applicable to the assessment and· collection of taxes thereunder.

Between the first of January and the twentieth of February in every year, all persons are required to make a statement or return, on oath, to the county auditor of all such property, giving its value. The returns for each tax district are subsequently submitted to and passed upon by a board of assessors appointed for such district, who are sworn to fairly and impartially assess the value of such property. If the board increases the aggregate valuation put upon his property by the taxpayer by as much as one hundred dollars, notice must be given to the taxpayer, and he has the right of appeal to the county board of equalization, which is composed of the chairmen of the boards of assessors for the several districts in the county, who are sworn fairly and impartially to discharge the duties imposed upon them by law. They hear all grievances and appeals from the valuations and assessments made by the boards of assessors, and may take testimony in regard to the same. If they raise the valuation of any property, the owner must be notified. If the taxpayer cannot get relief from the board of equalization, he has the right of appeal to the Comptroller General,

to whom all the testimony relative to each grievance must be forwarded, and he acts thereupon.

After the assessments are fixed, the taxes, if not paid within the time prescribed by law, are collected by distress or by execution. If a taxpayer conceives that a tax assessed against him is unjust or illegal for any cause, he may pay the same under protest, and bring his action against the treasurer in the Court of Common Pleas to recover it.back. Under that provision of the law this action was brought.

The provision of the 14th amendment to the Constitution of the United States, which it is claimed this act violates, reads as follows: "No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Section 5 of article 1 of the Constitution of this State is to the same effect, and in nearly the same words.

The rights guaranteed by these constitutional provisions have been the subject of frequent judicial consideration. The courts have not attempted to give a definition of the meaning of the words "due process of law," so as to cover all possible cases, nor have they undertaken to say what would or would not, under all circumstances, satisfy the guarantee of "the equal protection of the laws," but have generally been content to proceed by the process of inclusion and exclusion in ascertaining their intent and meaning and their application to the facts of each case as it is presented for decision, and with giving the reasons upon which the decision is rested.

The claim that the act deprives the plaintiff of his property without the due process of law and denies him the equal protection of the laws, raises questions under the Federal Constitution, upon which the decisions of the Supreme Court of the United States are authoritative and

controlling. In solving these questions, we must, therefore, be guided by the decisions of that Court.

In the Kentucky Railroad tax cases, 115 U. S., 321, 29 L. Ed., 414, the Court considered a statute of the State of Kentucky, which involved both these constitutional guarantees. Upon the question of what is due process of law, in the matter of levying and collecing taxes, the Court, by Mr. Justice Mathews, said: "It has, however, been repeatedly decided by this Court that the proceedings to raise the public revenue by levying and collecting taxes, are not necessarily judicial; and that 'due process of law,' as applied to that subject, does not imply or require the right to such notice and hearing as are considered to be essential to the validity of the proceedings and judgments of judicial tribunals. Notice by statute is generally the only notice given, and that has been held sufficient. 'In judging what is due process of law,' said Mr. Justice Bradley, in *Davidson* v. *New Orleans,* 96 U. S., 97, 107 (24 L. Ed., 616), 'respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain or the power of assessment for local improvements, or none of these; and if found to be suitable or admissible in the special case, it will be adjudged to be "due process of law;" but if found to be arbitrary, oppressive and unjust, it may be declared to be not "due process of law." '

"In its application to proceedings for the levy and collection of taxes, it was said in *McMillen* v. *Anderson,* 95 U. S., 37, 42 (24 L. Ed., 355), that it 'is not, and never has been, considered necessary to the validity of a tax that the party charged should have been present, or had an opportunity to be present, in some tribunal when he was assessed.' This language, it is true, was used in the decision of a case in reference to a license tax where all the circumstances of its assessment were declared by statute, and nothing was intrusted to the discretion of public officers; but, in the *State Railroad Tax Cases,* 92 U. S., 575, 610 (23 L. Ed.,

663), where the ascertainment of the taxable value of railroads was the duty of a board, as in the present cases, whose assessment was challenged for the reason that the proceeding was not "due process of law," for want of notice and hearing, it was said by Mr. Justice Miller, delivering the opinion of the Court: 'This board has its time of sitting fixed by law. Its sessions are not secret. No obstruction exists to the appearance of anyone before it to assert a right or redress a wrong; and in the business of assessing taxes, this is all that can be reasonably asked.'" See also, *Cass Farm Co.*, v. *Detroit*, 181 U. S., 396, 45 L. Ed., 914.

Upon the guarantee of the equal protection of the laws, the same Court, speaking through Mr. Justice Bradley, in *Bell's Gap R. R. Co.* v. *Pennsylvania*, 134 U. S., 232, 33 L. Ed., 892, said: "The provision in the XIV amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the State Legislature, or the people of the State in framing their Constitution. But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our government, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule

or definition on the subject that would include all cases. They must be decided as they arise. We think that we are safe in saying that the XIV amendment was not intended to compel the States to adopt an iron rule of equal taxation. If that were its proper construction, it would not only supersede all those constitutional provisions and laws of some of the States, whose object is to secure equality of taxation, and which are usually accompanied with qualifications deemed material; but it would render nugatory those discriminations which the best interests of society require, which are necessary for the encouragement of needed and useful industries, and the discouragement of intemperance and vice, and which every State, in one form or another, deems it expedient to adopt."

In *Magoun* v. *Illinois Trust and Savings Bank,* 170 U. S., 283, 42 L. Ed., 1037, the constitutionality of a statute of the State of Illinois was affirmed. The statute imposed a graduated tax on legacies and inheritances, and divided the beneficiaries into three classes, the first and second being composed of lineal and collateral relations of the decedent, and the third being composed of more distant relatives and strangers. On the first class, a tax of one per cent. was imposed on all sums in excess of $2,000; on the second, two per cent. on all sums in excess of $2,000; and on the third, three per cent. on all sums over $5,000 and less than $10,000, increasing one per cent. on each succeeding $10,000 up to $50,000, above which amount it was 6 per cent.

The act was attacked on the ground that it denied to the plaintiff the equal protection of the laws. In disposing of the question, the Court said: "What satisfies this equality (equal protection of the laws) has not been, probably never can be, precisely defined. Generally, it has been said that it only requires the same means and methods to be applied impartially to the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances."

The right of the legislature of the State to make reasonable classifications of persons and property for public purposes has been so often affirmed by the courts that it can not longer be questioned.  If the classification is not arbitrary, that is, if it bears reasonable relation to the purposes to be effected, and if the constituents of each class are all treated alike, under similar circumstances and conditions, the rule of equality is satisfied.

It is contended by appellant that this act violates the provisions of section 1, article X of the Constitution of this State, which requires the legislature to provide for a uniform and equal rate of assessment and taxation, and prescribe regulations to secure a just valuation for taxation for all property.  The section, however, has this important proviso: "That the General Assembly may provide for a graduated tax on incomes."  These provisions must be construed together, and, by the proviso, taxes on incomes are excepted from the requirement of a uniform and equal rate of assessment and taxation of all property; for it is impossible to conceive how a tax on incomes could be graduated, without exempting some incomes, or without making the tax higher on some than on others.  If the tax is so graded, those paying the lower tax are exempted to the extent of the difference.  The determination of the amount of income that shall be wholly exempted and the method and ratio of graduation were left by the Constitution to the discretion of the legislature, and with the exercise of that discretion the Courts have no concern.  Necessarily, the exercise of such a discretion must, to some extent, be arbitrary.

The next objection to the act is that it results in double taxation.  The contention is that plaintiff's income was derived from dividends upon his stock in corporations, chartered and doing business under the laws of the State, and as these corporations had paid taxes

on their property, and also on their franchises, a tax on plaintiff's income is double taxation.

There is much room for discussion and difference of opinion as to what really amounts to double taxation. But the weight of authority and reason sustains the taxation of shares of stock in a corporation to the holder thereof, notwithstanding the corporation has paid taxes on its property and also on its franchises. The rents and profits derived from real estate, and the products of the farm may be taxed, though the land from which they are derived has also been taxed. The profits of a business may be taxed, though the property in the business, bought on credit, has been taxed to the owner, and the debt he owes therefor has been taxed to the creditor; and the property covered by mortgage may be taxed to the owner, and the mortgage thereon to the mortgagee. Cooley on Taxation (3 Ed.), 387, *et seq.*

These may be instances of double taxation in one sense, yet they are not within the rule of uniformity and equality prescribed by the Constitution, which forbids the taxation twice of the same property for the same purpose, while other property, under similar circumstances and conditions, is taxed only once.

There is no constitutional inhibition against such taxation, and in the absence of constitutional restriction, the power of the legislature to tax is limited only by its own discretion, and its responsibility to its constituents. It has been said the power to tax is an inherent right of sovereignty, necessary to its existence, and limited only by its necessities. Judge Cooley, in his works on Taxation, at page 392, says: "We make out, therefore, no conclusive case against a tax, when we show that it reaches twice the same property for the same purpose. This may have been intended, and, in many cases, at least, is admissible."

Next, it is alleged that the act violates section 2 of article X of the Constitution of this State, which declares: "The General Assembly shall provide for an annual tax sufficient

to defray the estimated expenses of the State for each year," in that it attempts to provide for taxation for more than one year, regardless of the estimated expenses of the State for years in which the same is to be collected. This is merely an assumption on the part of the appellant. By the terms of the statute, the tax is levied annually, and is applied to the expense of the State in the year in which it is collected. We are bound to assume that, in estimating the annual expense of the State, the legislature takes into consideration all the sources of income to the State, including the income tax, and fixes the general levy accordingly.

It is also contended that the act violates section 3 of article X of the Constitution, which provides: "No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same, to which object the tax shall be applied." The title of the act (22 Stat., 529) is: "An act to raise revenue for the support of the State government by the levy and collection of a tax on incomes." That is certainly a distinct statement of the object to which the tax shall be applied.

The last point made is that the act was repealed by the supply act of 1905. Section 5 of that act requires the auditors and treasurers of the several counties to collect the taxes levied under and in pursuance of its provisions, and forbids their collecting any other tax whatsoever, except, amongst others, "such special tax or collection as is authorized under any act or joint resolution of the General Assembly." It seems to us the exception clearly covers the income tax. But it is argued that this is not a special tax. We think it is. The word "special" is defined in the Standard Dictionary, as "having in a peculiar and distinguishing degree some characteristic or characteristics; out of the ordinary." It seems from the numerous objections urged by plaintiff against this tax that he at least considers it "out of the ordinary," and as "having in a peculiar and

distinguishing degree some characteristics" of a very objectionable nature.

But there are no express words of repeal in the supply act, and there is certainly no necessary implication of such an intention on the part of the legislature. On the contrary, the same provisions will be found in each supply act since the passage of the income tax act, and notwithstanding that provision, the income tax act was incorporated in the Code of 1902, and was amended in 1905 by repealing the 8th section of the original act. This clearly shows that the legislature did not intend by that provision in the general supply act to repeal the income tax act.

Judgment affirmed.