## 11855

### PARIS MOUNTAIN WATER COMPANY v. WOODSIDE, COUNTY TREASURER

### SAME v. FOSTER, COUNTY TREASURER

1. Taxation—If Pipe Lines of Water Company Are Realty, There Can be Assessment Only Every Four Years.—Under Civ. Code 1922, §§ 348, 465, providing for assessments every four years on real estate, if pipe lines of water company were realty, there could be no new assessments in 1911 and 1912 after an assessment in 1910.

2. Fixtures—General Rule at Common Law That Whatever is Annexed to Soil Becomes Part Thereof Has Been Much Relaxed in Modern Times.—General rule at common law that whatever is affixed to soil becomes part thereof has been much relaxed in modern times in favor of trade; Courts looking to questions of annexation agreement and intention.

3. Taxation—Pipe Lines of Water Company Held Real Estate for Purpose of Taxation Under Common Law.—Pipe lines of water company, used for purpose of carrying and distributing water within city and from reservoirs, *held* real estate for the purpose of taxation under common law.

4. Statutes—Ambiguous Language in Statutes Relating to Taxation Must be Construed Against State and in Favor of Taxpayer.—If Civ. Code 1922, §§ 341, 432, defining real estate and personal property for purposes of taxation, are ambiguous, they must be construed against the State and in favor of taxpayer.

5. Taxation—Water Company's Pipes Not Taxable as Personalty; "Fee in the Soil."—"Fee in soil," within Civ. Code 1922, § 432, providing that, when "fee in soil" is owned by one, structures owned by another are taxable as personalty, means a complete fee and not fee subject to easements, and pipes of water company owning easement, are not so taxable.

6. Taxation—Intent of Legislature to Exclude Property of Gas and Water Companies From Being Personal Property Shown.—Civ. Code 1922, § 372, declaring property of railroad and telegraph companies personal property for purpose of taxation, and omitting similar property of gas and water companies, shows absence of necessary legislative intent to modify the common law as to the latter.

Before Rice, J., Greenville, February, 1925.   Affirmed.

Actions by the Paris Mountain Water Company against James H. Woodside as County Treasurer of Greenville County and J. A. Foster as County Treasurer of Greenville County.   From judgments for plaintiff, defendants appeal.

The following is the decree of the lower Court:

"These two actions were begun January 28, 1913, and January 28, 1914, against the Treasurer of Greenville County, to recover taxes paid under protest December 30, 1912 (for the year 1912), and December 30, 1913 (for the year 1913).   By agreement herein, both complaints are regarded as amended to substitute Walter L. Miller, present

Treasurer of said County as defendant in each case. The original action in each case sought to recover taxes paid in four townships: Greenville City, Greenville Township, Chick Springs, and Paris Mountain; the claims have been withdrawn as to Chick Springs and Paris Mountain Townships, and the actions now relate only to the other two townships.

"On June 30, 1924, the company surrendered and canceled its charter; it appearing that it was inadvertently done, without having in view this litigation which has been pending for a long time. There was a motion to substitute as parties plaintiffs Robert Wetherill, H. P. Hodge, W. H. Roth, E. E. Smith, and J. G. Leipey, who were the board of directors, they to be substituted as trustees under the statute; and it is ordered that they be, and they are hereby, substituted as plaintiffs in this action. The case was heard by me upon an agreed statement of facts and upon certain papers and records referred to therein.

"Plaintiff was chartered as a public service corporation October 1, 1890; the charter being unlimited as to time. By virtue of ordinances of the City of Greenville, July 15, 1890, and April 5, 1892, plaintiff acquired a 25-year franchise for the purpose of furnishing water supply for the City of Greenville. Under the terms of this ordinance, which became the agreement between the City and the Company, it is provided:

" 'That the company for the purpose of constructing, maintaining, operating, extending and repairing said system of waterworks, shall have the sole and exclusive privilege and full power, right, and authority to lay pipes and mains for water along any or all streets and avenues of said city as the same are now open, or may hereafter be extended, or any new streets which may be opened, said lines to be laid by consultation with the chairman of the street committee, and to that end shall have full right to dig ditches or trenches in the streets of said City to such depth and width as

may be necessary in which to lay the pipes or mains in, and to use the streets, sidewalks and bridges for like purposes.'

"The Water Company acquired a large tract of land in nearby townships of Paris Mountain and Chick Springs for watersheds, built dams and reservoirs there, and constructed a gravity system of waterworks, all connected together, the water pipes and mains running from the reservoirs through Greenville Township and throughout the City. In the City the pipe lines are in the streets, which are owned in fee by the City; the company's rights therein being acquired under its charter and the ordinance above referred to. In the Township of Greenville (which is outside the City) pipe lines are laid on perpetual rights of way, acquired from the owners of the land about 1890 and shortly thereafter.

"Prior to 1910, so far as appears, the company had no trouble on question of tax liability. But in 1910—the year for making real estate returns under the statute requiring such returns once in every four years—the agent of the company, erroneously, if the pipe lines are realty, returned said pipe lines in Greenville City and Greenville Township as personal property instead of real estate. This 1910 return has been lost or destroyed by fire, but Mr. Perry, the new superintendent, in 1911 and 1912 made returns based on and identical with the 1910 return. The 1913 return for the City and for Greenville Township was the same (except for the addition of a new pipe line valued at $1,750).

"The 1912 return for Greenville City (and Greenville Township together) was: Real estate, $1,250; personal property, pipe lines, etc., $81,310. For 1913 separate returns were made for Greenville City and Greenville Township, aggregating the same as in 1912 (disregarding the new Westervelt line, $1,750). The return was: City—real estate 1,250.00; pipe lines, $66,417.09. Greenville Township—pipe lines, $14,890.91 (there was nothing but pipe lines in Greenville Township). It is agreed that the

return for 1912 should be separated, and should be similar to the 1913 returns, omitting the Westervelt line.

"The taxing authorities raised this total assessment (as to the pipe lines only) from $81,310 to $256,605, divided in 1912: City, $216,180; and township, $40,425. In 1913 the increased amount was the same for the City and was $42,175 for the Township (which adds the $1,750 for the Westervelt line).

"Taxes collected on this assessment for both City and Township together in 1912 were $5,684.29; whereas, if the taxes had been collected upon the value as set forth in the company's return, they would have amounted to $1,874.24. The difference is $3,810.05, for which plaintiff brings this action, claiming interest from the date of payment, December 30, 1912.

"The taxes collected for both City and Township together in 1913 were $6,280.89; whereas upon the valuation in the return the taxes should have been $1,987.86. The difference is $4,293.03 for which the plaintiff brings a second action, claiming interest from date of payment, December 30, 1913.

"If these pipe lines were realty, then, under the statute (Volume 3, Code, 1922, §§ 348 and 465) providing assessments every four years only, there could be no new assessment in 1911 and 1912; there having been an assessment in 1910.

"The increase from the valuation of the pipe lines in these two townships in 1912 was made by the Township Assessors, and, when it was brought to the attention of the company's counsel that the pipe lines had been assessed as personal property, he made prompt objection for the Water Company, and on June 6 took the matter to the County Board of Equalization. The County Board not only overruled the objection, but raised the assessment still further to the large sum of $353,325. The Water Company appealed to the Comptroller General, claiming that County

Board should have assessed the property as real estate, and that the valuation was excessive. The Comptroller General did not pass upon the question as to whether the pipe lines were realty, but restored the assessment to the amount fixed by the Township Board of Assessors.

"The question in these cases is this: Whether the pipe lines or pipe system of the Water Company (including the rights of way and other easements of the Company) in Greenville City and Greenville Township, are personal property or real property, for the purpose of taxation; or, in other words, the question is whether the Company's system of pipe lines constitutes fixtures such as become part of the realty to which they are attached. These pipe lines are buried from 2 to 7 feet under the ground, annexed to the reservoirs a few miles away, and annexed to the hydrants, stand pipe, etc., in the City. Are they taxable by common law as realty or personalty? And are the taxation statutes in this State declaratory of the common law, and in harmony with it, or in derogation of, and establishing a different rule from, the common law?

"Both under the principles of the common law as deduced from the South Carolina cases and general authorities, and under the cases from other jurisdictions upon the same questions as to pipe line systems and similar structures, such pipe lines would clearly seem to be such fixtures as are realty, and such would be the conclusion here, unless a contrary result is brought by the South Carolina statutes. The Court will consider first the question with reference to the common law and second as the statutes.

"1. As to the common law.

"It was a maxim of the common law that whatever is annexed to the soil becomes a part thereof. 26 C. J., 652, § 2; Bl. Com., 281. And by annexation is meant such a connection with the freehold that the article could not be removed without violence or injury to the freehold. 11 R. C. L., 1095. *McClintock v. Graham*, 3 Mc-

Cord (13 S. C. Law) 554-556. *Reid v. Kirk,* 12 Rich. (46 S. C. Law) 54-64; and numerous other decisions in this State on the point. However, the general rule has been much relaxed in modern times in favor of trade, our Court looking at the question of annexation and the question of agreement or intention of the parties, as said in *McClintock v. Graham,* above, 556: 'It is obvious that it must always be considered, first, in relation to the article itself, to say if it be a fixture, and, if so, then in relation to the parties claiming the right.' And there has been a decided relaxation as to the original rule of the common law—this modern relaxation has been effected chiefly in favor of trade. *Padgett v. Cleveland,* 33 S. C., 344; 11 S. E., 1069. *Rawls v. Ins. Co.,* 97 S. C., 189, etc., 81 S. E., 505. It is a mixed question of law and fact, and all the circumstances should be considered by the Court. *Saye v. Hill,* 100 S. C., 21, etc., 84 S. E., 307.

"What are the circumstances?

"The Water Company admittedly had an easement or a right in the soil, wherever it had a pipe line, and the pipe lines are buried several feet in the soil and connected with other structures. In the opinion of the Court, the annexation would be sufficient to constitute a pipe line a fixture, in the absence of any agreement to the contrary. The City might have insisted upon a provision in its agreement with the Water Company that pipe lines should be regarded as personalty, or the State (perhaps) for taxation purposes might have made it a condition of the charter that the pipe lines be so regarded, but there was no agreement or stipulation of any kind to that effect. Compare *Hurst v. Craig,* 95 S. C., 221; 78 S. E., 960, holding electric light wiring, awnings, etc., to be fixtures in the absence of any agreement to the contrary. The purchaser's rights of way are perpetual, and the easements in the streets are not revocable. 26 Cyc., 674, *Providence v. Thurber,* and *Paris v. Norway,* below cited.

"It does not seem reasonable that a populous city would expect or intend that its water system should be torn out or interfered with, and there are good reasons of public policy in connection with the health and welfare of the community for regarding such improvements as permanent (see cases below). And, as to the requirements as to permanency, it has been said:

" 'In the requirement of an intention to make the article annexed a permanent accession to the land, the expression "permanent" does not, it seems, imply that the annexation must be intended to be perpetual, but rather that the article shall appear to be intended to remain where fastened until worn out, until the purpose to which the realty is devoted has been accomplished, or until the article is superseded by another article more suitable for the purpose. And it appears to be sufficient that it is intended to remain where placed so long as the land or building to which it is annexed may be used for the same purpose. The intention of the annexor that the article shall remain "indefinitely" has also been referred to as the criterion.' 26 *Corpus Juris,* 657, 658.

" 'By the decided weight of authority' in England and America, such pipe lines are real estate for the purpose of taxation under the common law. 37 Cyc., 8567; note to *People v. State Board,* L. R. A., 1916B, 1229; the English cases referred to in *Paris v. Norway,* below cited, and also the cases of *Providence v. Thurber,* 2 R. I., 15; 55 Am. Dec., 621, and cases cited in note page 26. *Paris v. Norway Co.,* Me., 21 L. R. A., 526. *Oskaloosa Water Co. v. Board of Equalization* (1892), 84 Iowa, 407; 51 N. W., 18; 15 L. R. A., 296. *Colo. Fuel Co. v. Pueblo Water Co.,* 11 Colo. App., 352; 52 P., 232. *Willard v. Pike,* 59 Vt., 202; 9 A., 907; cases in note to *Consolidated Gas. Co. v. Baltimore,* (1905), 101 Md. 541; 61 A., 532; 1 L. R. A. (N. S.), 264; 109 Am. St. Rep., 584.

"2. How is the question affected by the South Carolina statutes?

"The sections of the statutes involved are 341, 432 and 372, Vol. 3, Code, 1922 (293, 380, and 305, Vol. 1, Code, 1912). All three sections are parts of the General Tax Act of 1882 (17 Statute at Large, p. 983 et seq.), the said sections being found at pages 983, 984, 992, 993, and 1006. These sections should be read together, effect given to each, and harmonized if possible. They seem to be framed in recognition of the common law as to fixtures, and the Court thinks that they are declaratory of those principles rather than in derogation thereof. I do not think that the Legislature meant to change the common-law principles as to the law of fixtures with respect to pipe lines of gas or water companies in this State, especially since (Section 372) it made such a change as to the rights of way, etc., of railroads and telegraph companies, and omitted rights of way, pipe lines, etc., of gas and water companies.

"If the language of Sections 341 and 432 (taken together) is ambiguous, it must be construed against the State and in favor of the taxpayer. *Fuller v. Tax Commission*, 128 S. C., 14, 22; 121 S. E., 478.

"Section 341 reads: 'The phrase "real property" * * * shall be held to mean and include not only the land * * * but all structures and other things therein contained or annexed or attached thereto which pass to the vendee by the conveyance of the land.' 'Conveyance of the land' would of course mean by fee-simple title, such as could be made only by fee-simple deed here jointly by the owner of the easement, which is realty and the owner of the balance of the fee; and this is substantially the definition of the real fixtures under the common law. Section 432 says: 'When the fee of the soil in any tract or lot of land is in one person, and right to any * * * structures thereon in another * * * the said structures shall be valued and taxed as personal property, to the owners thereof' and this seems to

show the legislative purpose to recognize those lines of cases in this State which establish exceptions as to the law of fixtures as between the owner of the land and such persons as have rights to structures thereon by intention or agreement, as for example, vendors (of machinery, etc.), and improving tenants.

"To hold, as defendant contends, that Section 432 makes these pipe lines personalty for the purpose of taxation brings that section into conflict with Section 341, which makes them realty. This conflict can be avoided only by construing Section 432 as intending to limit the generalty of the definition of real fixtures in Section 341, so as to exclude such cases as those above referred to, in which the Supreme Court has recognized the limits of the general rule of annexation, in favor of trade on the agreement of the parties. In this view the words 'fee in the soil' would mean a complete fee and not part of a fee, or a fee subject to easements; only the owner of the land where pipe lines run and the water company, the owner of the easements jointly, could convey such a fee. This construction would bring all the language into harmony and harmonize with the common-law principles as to fixtures in this State.

"This conclusion is greatly strengthened by considering the question in connection with Section 372, a part of the original act. It expressly provides that railroad tracks, roadbeds, and rights of way and telegraph poles, wires, rights of way, etc., are personalty for the purpose of taxation, but omits similar rights of way and structures (such as pipe lines of gas and water companies) from its provision. Rights of way, etc., of railway companies and telegraph companies were real estate by the principles of common law; it took this special statute in derogation of the common law to make them personal property for the purposes of taxation; but, although such pipe lines are obviously on the same footing, they are omitted. The ex-

pression of the legislative intent as to railroad and telegraph companies and the omission of similar property of gas and water companies show the intent to exclude the latter, or at least an absence as to them of the necessary legislative intent (shown as to the former) to modify the common law.

"On the point that grants to corporations of the right to lay pipes in streets are easements, and together with rights of way of railroads, poles, wires, etc., are real estate in the absence of statute, see *Providence Gas Co. v. Thurber*, 2 R. I., 15; 55 Am. Dec., 621, and 626; 26 C. J., 674, *City of New Haven v. R. R. Co.*, 38 Conn., 422; 9 Am. Rep., 403, citing a number of cases and saying 'that property so situated is real estate' has been repeatedly decided; and see numerous cases in note to *Webster Lumber Co. v. Keystone Co.*, 66 L. R. A., 52, 55, 56-58.

"The plaintiffs, trustees, are entitled to judgment in the first action for the sum of $3,810.05, together with interest at 7 per cent. from December 30, 1912, and to judgment in the second action for the sum of $4,293.03, together with interest from December 30, 1913, at 7 per cent. and have leave to enter up judgment accordingly.

"Pursuant to Section 461, Vol. 1, of the Code of 1912 (Section 512, Code, 1922), the Court hereby certifies of record that said amounts were wrongfully collected as taxes in Greenville City and Greenville Township for the year 1912 and the year 1913, respectively, and ought to be refunded, and it is so ordered. It is further ordered that the Comptroller General shall issue his warrant to the plaintiff's attorneys for the refunding thereof, to be paid in preference to other claims against the treasury in accordance with the provisions of said section. Let these amounts be prorated between Greenville Township and Greenville City in accordance with and in proportion to, the amounts collected by each in 1912 and 1913 on the pipe lines in question. In 1912 the total was $5,684.29, of which the City

paid $4,946.54, and the Township paid $737.75.    In 1913 the total paid was $6,280.89, of which the City paid $5,-490.11, and the Township paid $790.78."

*Messrs. John M. Daniel, Attorney-General* and *S. M. Wolfe,* for appellant, cite: *Former appeal of this case:* 102 S. E., 845. *Appeal from unjust assessment:* 37 Cyc., 1107; Civ. Code, 1922, Sec. 479. *Recovery of tax paid under protest:* Civ. Code, 1922, Sec. 512. *Remedy exclusive:* Civ. Code, 1922, Sec. 70; 33 S. C., 339; 51 S. C., 1; 28 S. E., 1; 95 S. C., 221; 78 S. E., 960; 97 S. C., 189; 81 S. E., 505; 100 S. C., 21; 117 Ind., 176; 19 N. E., 753; 3 L. R. A., 33; 42 Kan. 23; 21 P., 809; 4 L. R. A., 284; 16 A. S. R., 471; 2 Bouvier's Law Dictionary 1239. *Easement defined:* 2 Washb. on Real Property, 25 *Rights of way appurtenant and in gross:* 13 S. E., 470. *Real estate for purpose of taxation defined:* Civ. Code, 1922, Sec. 341. *Personal property for purposes of taxation defined:* Civ. Code, 1922, Sec. 432; 3 Bouvier's Law Dictionary, 2576 and 2816. *Gas pipes in street held personalty:* 6 Coldw. (Tenn.), 310; 98 Am. Dec., 452.

*Messrs. Martin & Blythe,* for respondent, cite: *Issues of fixtures one of law and fact:* 128 S. E., 876; 95 S. C., 221; 78 S. E., 960. *Annexation to soil as evidence of intention:* 128 S. E., 876; 95 S. C., 221; 78 S. E., 960; 26 C. J., 657. *General rule as to annexation to soil:* 15 S. C., 70; 95 S. C., 221; 78 S. E., 960. *Agreements between parties affecting general rule:* 33 S. C., 344; 97 S. C., 189; 95 S. C., 221; 78 S. E., 960; 128 S. E., 876. *Pipe lines taxable as realty:* L. R. A., 1916B, 1229 note; 37 Cyc., 856; 21 L. R. A., 526. *Legislature presumed not to intend to change common law:* 128 S. E., 865. *Ambiguity in statute resolved in taxpayer's favor:* 128 S. C., 14; 121 S. E., 478. *Real estate for purposes of taxation defined:* Civ. Code, 1922, Secs. 341 and 342. *Railroad tracks, etc., personalty for purposes of taxation:* Civ. Code, 1922, Sec.

372. *Recovery of taxes wrongfully collected:* Code Civ. Proc., 1922, Secs. 462, 512 and 513. *Recovery of interest on taxes wrongfully collected:* 89 U. S., 604; 22 L. Ed., 840; 15 Wall., 75; 21 L. Ed., 63; 144 N. Y., 396; 39 N. E., 400; 108 N. Y., 542; 15 N. E., 417; 51 Wis., 407; 8 N. W., 248; 55 Wis., 271; 13 N. W., 255; 218 Ill., 40; 1 L. R. A. (N. S.), 772; 15 R. C. L., 17; Civ. Code, 1922, Sec. 3636; 1 N. & McC., 45; 4 McC., 392. *Case distinguished:* 48 Fed., 541.

November 6, 1925.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

The elaborate and able decree of his Honor, Judge Rice, is satisfactory to me, and it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE GARY and MR. JUSTICE MARION and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE COTHRAN disqualified.