[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 83 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
Order of Judge Eatmon follows:
The above entitled action was instituted to challenge the validity and restrain the enforcement of an Act of the General Assembly of South Carolina passed at the 1947 Session, 45 St. at Large, p. 589. The defendants in the cause are the County Treasurer of Charleston County, to whom the tax is payable by the terms thereof, and the Circuit Solicitor of the Ninth Judicial Circuit, as the prosecuting officer in Charleston County. The Act in question was approved May 19, 1947, and under the same there was levied *Page 87 
an annual license tax for the privilege of engaging in each and every business and occupation in the County of Charleston, except in the City of Charleston, which comprises School District No. 20 of said County. This tax is graduated as follows:
"On not exceeding the first Five Thousand ($5,000.00) Dollars of annual gross receipts therefrom, the sum of Twenty ($20.00) Dollars;
"On the excess over Five Thousand ($5,000.00) Dollars to Thirty Thousand ($30,000.00) Dollars of annual gross receipts therefrom, an amount of money equal to one-fourth (1/4) of one (1%) per cent thereof;
"On the excess over Thirty Thousand ($30,000.00) Dollars to One Hundred Thousand ($100,000.00) Dollars of annual gross receipts therefrom, an amount of money equal to one-sixth (1/6) of one (1%) per cent thereof;
"On the excess over One Hundred Thousand ($100,000.00) Dollars to Two Hundred Thousand ($200,000.00) Dollars of annual gross receipts therefrom, an amount of money equal to one-eighth (1/8) of one (1%) per cent thereof;
"On the excess over Two Hundred Thousand ($200,000.00) Dollars of annual gross receipts therefrom, an amount of money equal to one twenty-fifth (1/25) of one (1%) per cent thereof."
The Act requires each taxpayer to file with the County Treasurer of Charleston County on or before each July 15th, commencing with July 15, 1947, a statement under oath showing his gross receipts for the preceding fiscal year, and to pay a tentative tax calculated on the basis of such statement. A like statement must be filed on or before the following July 15th on the basis of which the tentative tax is reconciled with the actual tax due, by rebate or additional payment, and the tentative tax for the ensuing fiscal year is paid, with reconciliation in similar manner at the end of such *Page 88 
fiscal year. A taxpayer commencing any business or occupation in a fiscal year must estimate his gross receipts for such year, and pay a tentative tax on the basis thereof, subject to like reconciliation at the end of the fiscal year.
Section 6 of the Act provides:
"The County Treasurer shall place to the credit of the Trustees of each school district the amount of the license fees collected by him under this Act in such district, and the same shall be expended by such Trustees for educational purposes within the District. Where a license fee covers the engaging in a business or occupation in more than one such school district the said license fee shall be prorated among such school districts on the basis of annual gross receipts."
There are no penalties for late payment, but willful misstatement of gross receipts in an application for a license, as well as engaging in a business or occupation without first having obtained a license so to do, are subject to criminal prosecution and punishment.
One of the plaintiffs here is a distributor of petroleum products with a place of business in the County of Charleston outside of the City. He alleges that his gross receipts are derived partly from deliveries in that portion of Charleston County in which the Act is applicable, and partly from deliveries made in the City, in which the Act is not applicable, by its express terms. When credit is extended, collection is made for him in Columbia, S.C. by the Standard Oil Company of New Jersey.
Another plaintiff operates a floral nursery and an exhibition garden in the portion of Charleston County in which the Act is applicable. He alleges that he sells a large part of his output of plants and shrubs in interstate commerce, in the course of which they are shipped to places outside the State. He also alleges that the admissions charged by him to his exhibition garden are already subject to the State admissions tax, and that the tax levied by the Act in question *Page 89 
constitutes a second license tax on the same gross receipts.
A third plaintiff conducts a road-side restaurant and a tourists' home in that portion of the County in which the Act is applicable. His contention is that he is subject to the tax while his competitors in the City are not.
A fourth plaintiff maintains deep water terminals in that portion of the County in which the Act is applicable, and offers its services in the handling of bulk petroleum products to various dealers in such products. Such products move through its terminals into other states, into other counties in this State, and into the City of Charleston, as well as into that portion of the County in which the Act is applicable.
A fifth plaintiff resides in that portion of the County in which the Act is applicable, but engages in her occupation entirely in the City, in which the Act is not applicable by its express terms. In the argument before me it was indicated that this plaintiff works for wages, and is not engaged in an occupation with gross receipts, overhead and expenses, and net receipts.
A sixth plaintiff is engaged in the wholesale distribution of confectioneries and tobaccos, with his place of business in the City of Charleston. He makes sales and deliveries in the portion of the County in which the Act is applicable, and some of the collections for such sales are made at his place of business in the City. He alleges that the merchandise sold by him is already subject to State and Federal excise taxes and that not only is the tax in question a third tax on such merchandise, but also that it constitutes a tax upon such taxes.
A seventh plaintiff is a truck farmer in that portion of the County of Charleston in which the Act is applicable. He markets his produce through the medium of the eighth plaintiff, which is a corporation engaged in the business of supplying farmers with merchandise and also of distributing and selling the products of their farming operations. *Page 90 
Almost all of such sales are made by the corporation to purchasers in other states and in Canada. It is alleged that the tax in question will fall on the gross amount of the sales made by the corporation for the farmers and also on the amount paid over by the corporation to the farmers.
Several of the plaintiffs allege that the Act in question will cause them to make a complete change in their method of keeping their books and accounts, which will involve more than a nominal expenditure by them.
The specific points of attack upon the Act are briefly:
(1) That it violates Article I, section 5, of the State Constitution, and also Article 14 of the Amendments to the United States Constitution, and that it is a denial of equal protection of the laws.
(2) That it violates Article I, section 6, of the State Constitution in that the tax is imposed on gross income from property owned by one or more plaintiffs, and hence constitutes a tax on such property which is not in proportion to its value.
(3) That it violates Article III, section 34, of the State Constitution, in that it is a special law where a general law may be made applicable.
(4) That it violates Article X, Section 1, of the State Constitution, in that it does not provide for a uniform and equal rate of assessment and taxation, and is not within any of the exceptions in that section.
(5) That it violates Article X Section 5, of the State Constitution, in that it vests the corporate authorities of the County of Charleston with power to assess and collect taxes for the corporate purposes of the said County without making such taxes uniform in respect to all persons and property within the jurisdiction of the County.
(6) That it violates Article I, section 8, of the United States Constitution, insofar as it undertakes to impose a tax on interstate commerce done in the portion of the County of Charleston in which the Act is applicable. *Page 91 
The Complaint also alleges that the plaintiffs have no adequate remedy at law under section 2807 et seq. of the Code of Laws of 1942, first, because the tax in question is not one within the scope of those sections, and secondly, because those sections do not provide for the recovery of interest on taxes paid under protest, and hence the plaintiffs have no adequate remedy at law for the loss of interest.
Within the time of answering, the defendants gave notice of Separate Demurrers before me, as the Judge of a Circuit adjoining the Circuit in which the County of Charleston lies, there being then and now no regular or special Judge in that Circuit. The matter has been argued fully before me by very able counsel for the parties. The grounds of the Demurrers are substantially the same, and they will be considered together, although such grounds are not herein set forth.
The Act involved here is a taxing statute, and as such it is to be construed and interpreted in the light of certain fundamental principles of constitutional law and established rules of constitutional and statutory construction.
Except as limited by the State and Federal Constitutions, the taxing power of the State is general, and absolute and extends to all persons, property, and business within its jurisdiction or reach. Santee Mills v.Query, 122 S.C. 158, 115 S.E. 202, 203; Fuller v. SouthCarolina Tax Commission, 128 S.C. 14, 121 S.E. 478;Shaffer v. Carter, 252 U.S. 37, 40 S.Ct. 221,64 L.Ed. 445.
"Within those limits the necessity, utility, and expediency of legislation are for the determination of the Legislature alone. Every presumption must be indulged in favor of the constitutionality of an act of the Legislature, and to justify a court in pronouncing legislation unconstitutional, the case must be so clear as to be free from doubt and the conflict of the statute with the Constitution *Page 92 
must be irreconcilable. Ordinarily, to doubt the constitutionality of the law is to resolve the doubt in favor of its validity * * *.
"Where the question is whether a state taxing law contravenes constitutional rights `the decision must depend, not upon any mere question of form, construction, or definition, but upon the practical operation and effect of the tax imposed.' Shaffer v. Carter, 252 U.S. 37,40 S.Ct. 221, 64 L.Ed. 445." Santee Mills v. Query, supra
[122 S.C. 158, 115 S.E. 203]. See also American Mfg.Co. of St. Louis, 250 U.S. 459, 39 S.Ct. 522,63 L.Ed. 1084.
"While a tax statute is to be reasonably construed as a whole with the view of carrying out its purpose and intent (Scottish U. N. Ins. Co. v. Bowland,196 U.S. 611, 25 S.Ct. 345, 49 L.Ed. 619; Santee Millsv. Query, 122 S.C. 158, 115 S.E. 202), where the language relied upon to bring the particular person or subject within the law is ambiguous or is reasonably susceptible of an interpretation that would exclude the person or subject sought to be taxed, the well-established general rule requires that any substantial doubt should be resolved against the government and in favor of the taxpayer (United States v. Merriam
[263 U.S. 179], 44 S.Ct. 69, 68 L.Ed. 240
[29 A.L.R. 1547])." Fuller v. South Carolina Tax Commission, supra
[128 S.C. 14, 121 S.E. 481]; cf. Jack Ulmer, Inc., v.Daniel, Atty. Gen., 193 S.C. 193, 7 S.E.2d 829, 832.
The Act under consideration imposes an occupation tax, and the value of the privilege extended is measured by the gross receipts of the particular business or occupation engaged in. Since gross receipts constitute the basis of the application of the tax, it would seem clear that, construed strictly, the Act does not apply to those who work for wages or salary, but only to those in business for themselves, so to speak, who have gross receipts, expenses and overhead, and net receipts from their endeavors. *Page 93 
The plaintiffs view the Act as imposing a gross income tax which is not levied on a statewide basis, but on the contrary, is confined in its operation to a single county, and actually to only a portion of that County. In my opinion, however, the correct view is that it levies an occupation license tax as a school district tax, imposed in each school district of Charleston County except the school district comprising the City of Charleston, known as School District No. 20 of said County. Its proceeds are to be placed to the credit of the trustees of the school district in which the same are collected, and provision is made for prorating between school districts on the basis of gross receipts any tax collected from a taxpayer engaging in a business or occupation in more than one school district. Such proceeds are to be used by such trustees for educational purposes within the several school districts. While the tax is to be collected by the County Treasurer of Charleston County, it is clear, from section 2776 of the Code of 1942, and from many other constitutional and statutory provisions, that the County Treasurer acts as the treasurer for each school district within the County.
The plaintiffs argue that the Act has a large extraterritorial effect, in that, according to their interpretation, gross receipts from business done within the state but outside that portion of Charleston County in which the Act is applicable must be taken into consideration in graduating the amount to be paid by each taxpayer coming within the purview of the Act, as well as his gross receipts from business done in other states, and even in foreign countries.
The defendants do not contend for so broad a construction. They point out that the tax is for the privilege of engaging in business or in an occupation in a limited area, and that it is graduated according to the gross receipts "therefrom", i. e., from the business done in that area. They recognize the limitations imposed on the power of the state in such decisions as Gwin, White Prince *Page 94 v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272;Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274; and Josephv. Carter Weeks Stevedoring Co., 330 U.S. 422,67 S. Ct. 815, and concede that the Act in question must be interpreted to take into account, as to each taxpayer, only the gross receipts which may properly be subjected to state taxation. cf. Ratterman v. Western Union Tel. Co.,127 U.S. 411, 8 S.Ct. 1127, 32 L.Ed. 229.
The defendants further point out, however, that the State's power to tax property is not destroyed by the fact that it is intended for and will move in interstate commerce (Lacoste v. Dept. of Conservation, 263 U.S. 545,551, 44 S.Ct. 186, 68 L.Ed. 437; Chassaniol v.Greenwood, 291 U.S. 584, 54 S.Ct. 541, 78 L.Ed. 1004), or by the fact that it has moved into the state in interstate commerce (McGoldrick v. Berwind-White Coal Mining Co.,309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A.L.R. 876; Askren v. Continental Oil Co., 252 U.S. 444,40 S. Ct. 355, 64 L.Ed. 654; Gregg Dyeing Co. v. Query,286 U.S. 472, 52 S.Ct. 631, 76 L.Ed. 1232, 84 A.L.R. 831, affirming 166 S.C. 117, 164 S.E. 588).
As the court held in Chassaniol v. Greenwood, supra
[291 U.S. 584, 54 S.Ct. 542]:
"Ginning cotton, transporting it to Greenwood, and warehousing, buying, and compressing it there, are each, like the growing of it, steps in preparation for the sale and shipment in interstate or foreign commerce. But each step prior to the sale and shipment is a transaction local to Mississippi, a transaction in intrastate commerce. Hence those engaged in performing any such local function may be subjected to an occupation tax, just as the property used, or processed, by them may be subjected to a property tax."
Thus it is well settled that manufacture, extraction and severance are local activities prior to the sale and shipment in interstate and foreign commerce, and *Page 95 
that an occupation tax on such activities may be graduated on the basis of value, measured by the sale price, when sold, of the article or product manufactured, extracted or severed, even if the sale should ultimately be in another State or country. American Mfg. Co. v. St. Louis, 250 U.S. 459,39 S.Ct. 522, 63 L.Ed. 1084; Oliver Iron Mining Co. v.Lord, 262 U.S. 172, 43 S.Ct. 526, 67 L.Ed. 929; Heislerv. Thomas Colliery Co., 260 U.S. 245, 43 S.Ct. 83,67 L.Ed. 237; Hope Natural Gas Co. v. Hall, 274 U.S. 284,47 S.Ct. 639, 71 L.Ed. 1049; Lacoste v. Dept. of Conservation,supra; International Harvester Co. v. Evatt,329 U.S. 416, 67 S.Ct. 444.
In State ex rel. Coney v. Hicklin, 168 S.C. 440,167 S.E. 674, 680, affirmed in Hicklin v. Coney, 290 U.S. 169,54 S.Ct. 142, 78 L.Ed. 247, certain parties questioned the validity of a license tax imposed on all carriers by motor truck for hire, on the ground:
"That said tax, imposed by the terms of said Act upon the `gross receipts' of such carriers, was a tax upon receipts from interstate as well as intrastate business, constituted a burden on interstate commerce in contravention of article 1, section 8, of the Constitution of the United States * * *."
The enforcement of the Act was developed upon the State Railroad Commission.
The Court held, in part:
"In the case at bar the evidence is clear that the Railroad Commission has not at any time undertaken to construe the acts in question as imposing any taxes upon interstate operations, and, until this is done, respondent has no cause for complaint."
In Santee Mills v. Query, supra, after quoting fromShaffer v. Carter, supra, the court held:
"No showing has been made that the injurious results anticipated have eventuated in fact or that plaintiffs have *Page 96 
in fact suffered prejudice. In the view taken of the purpose, scope, and meaning of the act as herein construed, it cannot be held that its enforcement will necessarily infringe the constitutional guaranties invoked by plaintiffs, and the court cannot assume in advance that such results will eventuate."
In Singer Sewing Machine Co. v. Brickell, 233 U.S. 304,34 S.Ct. 493, 496, 58 L.Ed. 974, a case involving an occupation or license tax, the court observed:
"But it is argued that the courts cannot properly sustain a statute which in direct terms applies to all commerce, by restricting it to cases of actual interference with interstate dealings. * * * This argument, we think misses the point. The statute under consideration does not in direct terms or by necessary inference manifest an intent to regulate or burden interstate commerce. Full and fair effect can be given to its provisions, and an unconstitutional meaning can be avoided, by indulging the natural presumption that the legislature was intending to tax only that which it constitutionally might tax. So construed, it does not apply to interstate commerce at all."
Under the construction urged by the defendants, it is fair to assume that they will apply the Act in such manner that its practical operation and effect will be consistent with, and not violative of, the commerce clause of the Federal Constitution, and, under the authorities which are applicable, an injunction should not be issued on a different assumption.
As to extra-territorial operation within the State, the power of the General Assembly, which is unaffected by the commerce clause, is much broader. Cf. Triplett v. City ofChester, 209 S.C. 455, 40 S.E.2d 684, and cases therein cited, especially Bluefield Produce Provision Co. v.City of Bluefield, 120 W. Va. 111, 196 S.E. 568. Nevertheless, the defendants do not contend for a broader application of the Act to business done within the state (but outside *Page 97 
the portion of Charleston County in which it is applicable) than it would have to business done without the State, and certainly the plaintiffs have no valid ground of complaint under such application.
It is suggested by the plaintiffs that the Act should not be construed to include within a taxpayer's gross receipts the amount of taxes which were previously paid on merchandise sold by him, the contention being that this would impose the instant tax on such previous taxes. But the tax is not on the property itself; it is on the privilege of dealing with it. The value of such privilege is measured by the gross receipts therefrom, and this is a familiar and valid method of ascertaining such value. The sale price of all merchandise includes previous taxation, and the fact that previous taxes may be visibly indicated by stamps on the merchandise does not change the legal effect of the Act, or its construction.
It is also suggested that the Act should be construed not to cover an occupation already licensed by the State, as for instance by the State tax on admissions. But the legislation imposing such State taxes does not purport to exclude local license taxes on the same occupations, or to exempt such occupations from a proper exaction for the support of local service which they enjoy. Cf. AmericanMfg. Co. v. St. Louis, supra.
Is the Act, as constituted herein, a valid exercise of the taxing power of the General Assembly? In my opinion it is.
Article X, section 1, of the State Constitution specifically authorizes graduated license taxes on occupations and business; Article X, section 5, empowers the General Assembly to vest the corporate authorities of various political subdivisions, including school districts, with power to assess and collect taxes for corporate purposes; and Article XI, section 6, provides that any school district may by the authority of *Page 98 
the General Assembly levy an additional tax for the support of its schools.
A license tax "is a tax in the ordinary acceptation 15, 16 of that term", and "as such it comes within the provisions of our tax laws," (Western Union Tel. Co.v. Town of Winnsboro, 71 S.C. 231, 50 S.E. 870, 872), and specifically comes within the provisions of Article X, section 5, supra. State v. Touchberry, 121 S.C. 5,113 S.E. 345.
Does the Act conflict with any constitutional limitation on the legislative power? In my opinion it does not.
The plaintiffs contend that it is a special law where a general law may be made applicable, in violation of Article III, section 34, of the Constitution.
But, like counties, the individual districts are each separate taxing districts under Article X, section 5, and a law that is special only in the sense that it imposes a lawful tax limited in application and incidence to persons or property within a certain school district does not contravene the provisions of that section of the Constitution. State v. Touchberry,supra; Anderson v. Page, 208 S.C. 146,37 S.E.2d 289; Moseley v. Welch, 209 S.C. 19,39 S.E.2d 133; Murph v. Landrum, 76 S.C. 21, 28, 56 S.E. 850;Nettles v. Cantwell, 112 S.C. 24, 99 S.E. 765.
The Act applies uniformly to all persons and property within the area in which it is applicable, and it necessarily follows that there has been no denial of equal protection of the laws under the state and federal Constitutions, as claimed by the plaintiffs. Smith v. Robertson,210 S.C. 99, 41 S.E.2d 631; Anderson v. Page, supra;Nettles v. Cantwell, supra.
The tax imposed by the Act is an excise tax, and not a property tax, and Article I, section 6, relating to taxation of property in proportion to its value as *Page 99 
well as Article X, section 1, relating to uniform and equal rate of assessment and taxation, are inapplicable to it. GreggDyeing Co. v. Query, 166 S.C. 117, 164 S.E. 588, affirmed in 286 U.S. 472, 52 S.Ct. 631, 76 L.Ed. 1232, 84 A.L.R. 831; Alderman v. Wells, 85 S.C. 507,67 S.E. 781, 27 L.R.A. (N.S.), 864, 21 Ann. Cas. 193.
The Act under consideration is, in my opinion, a valid enactment and its enforcement may not be enjoined by the court. Accordingly, and for the reasons stated herein, it is ordered, adjudged and decreed that the Demurrers to the Complaint in this action be, and the same hereby are sustained, and that the Complaint herein be and the same is hereby dismissed.
In the light of the construction of the Act which I have adopted, I did not deem it necessary to consider its specific application to the individual plaintiffs. They and all other taxpayers have an adequate remedy at law under section 2808 by paying any doubtful or disputed taxes under protest and bringing action against the County Treasurer to recover the same. Such procedure is far better adapted to precise determination of the rights of a contesting taxpayer.
I repeat that the tax in question is a school tax, and under section 2807, without entering upon the consideration of the question whether, under our decisions, a school district may be held liable for interest on taxes so paid (cf. Southern Ry. Co. v. City Council of Greenville,49 S.C. 449, 27 S.E. 652, and Paris Mountain WaterCo. v. Woodside, 133 S.C. 383, 131 S.E. 37, with MonarchMills v. South Carolina Tax Commission, 149 S.C. 219,146 S.E. 870, and Nutt v. Ellerbe, D.C., 56 F.2d 1058), it is sufficient to observe that the favored position of the government in respect to interest is an incident of sovereignty and demanded by public policy, the expediency of allowing interest on its obligations being for the consideration of the *Page 100 
legislature. Monarch Mills v. South Carolina Tax Commission,supra. The Courts would fail to recognize this principle if they undertook to exercise equitable jurisdiction merely because the legislature may not have seen fit to make such provision.
Prior to the service of the Summons and Complaint in this action, the Judge of the First Judicial Circuit issued a rule to show cause why an injunction pendente lite should not be granted, the Judge of the Ninth Judicial Circuit being out of the circuit. This rule was made returnable before the Judge of the Ninth Judicial Circuit, and pending hearing and determination thereon the defendants were temporarily restrained from enforcing the Act. In addition to their Demurrers to the Complaint, the defendants moved before me to vacate the temporary Restraining Order, but since the dismissal of the Complaint a fortiori vacates the rule and the temporary Restraining Order it is unnecessary to pass upon the motion to vacate.
February 26, 1948.
Appellants' exceptions to the judgment of the Court of Common Pleas in this action have been carefully considered and are found to be without merit. The judgment is adopted as the opinion of this Court and will be reported.
BAKER, C.J., and FISHBURNE, STUKES, TAYLOR, and OXNER, JJ., concur.