STATE *EX REL.* SOUTHERN RAILWAY CO. v. TOMPKINS.

1. ACT CONSTRUED—CON., ART. IX., SEC. 8—FOREIGN RAILROAD CORPORATIONS—CORPORATIONS.—The "Act to provide the manner in which railroad companies incorporated under the laws of other States or countries may become incorporated in this State," 22 Stat., 114, is not repugnant to sec. 8 of art. IX. of Con. 1895.

2. FEES—CORPORATIONS—RAILROAD—ACT CONSTRUED.—The act to provide for the formation of certain corporations, and to define the powers thereof, 22 Stat., 92, does not provide the fees which are to be charged foreign corporations upon becoming incorporated here under the act for that purpose (22 Stat., 114).

Application of the Southern Railway Company, within the original jurisdiction of the Court, for a mandamus requiring Hon. D. H. Tompkins, as secretary of state, to file their charter in his office.    Mandamus granted.

*Messrs. J. S. Cothran* and *B. L. Abney*, for petitioner.

*Mr. Attorney General Barber*, contra.

Nov. 25, 1896.   The opinion of the Court was delivered by

JUDGE WITHERSPOON, acting in place of Justice Gary, disqualified.   The petitioner, the Southern Railway Company, applies to this Court, in the exercise of its original jurisdiction, for a writ of mandamus to compel the respondent, Hon. D. H. Tompkins, as secretary of state, to file in his office a copy of the charter granted to the petitioner under the laws of the State of Virginia, in compliance with the provisions of an act of the legislature, entitled "An act to provide the manner in which railroad companies, incorporated under the laws of other States or countries, may be-

come incorporated in this State." Approved March 9th, 1896 (22 Stat., 114).

In his return the respondent admits that the relator, the Southern Railway Company, did tender to relatee, as secretary of state, to be filed in his office, as stated in the petition of relator, a duly authenticated copy of its charter granted by the State of Virginia, in compliance with the provisions of the act of March 9th, 1896, aforesaid. The respondent also admits that he declined to receive and file in his office the copy so tendered, upon the ground that the act of March 9th, 1896, is unconstitutional, being in conflict with section 8, article IX., of the Constitution of this State, ratified December 4th, 1895. If the aforesaid act of March 9th, 1896, should be held to be constitutional, the respondent submits that he is entitled to the fees fixed by the 9th section of an act, entitled "An act to provide for the formation of certain corporations, and to define the powers thereof," also approved March 9th, 1896 (22 Stat., 92), in addition to the fees allowed under the first section of the act first above mentioned. It appears that the Richmond and Danville Railroad Company, organized under the laws of Virginia prior to June 30th, 1874, operated as owner and under leases, connecting lines of railroads in different States, including the lines of railroads in this State, mentioned in the petition. It also appears that the said respective lines of railroads, including those mentioned in this State, were sold on or about June 30th, 1894, under foreclosure proceedings in the United States Circuit Court, and purchased by the bondholders, who subsequently reorganized under a charter granted by the State of Virginia, as the Southern Railway Company, and have ever since operated said lines of railroads in different States, including the roads in this State mentioned in the relator's petition. The relator being desirous of becoming a domestic corporation under the provisions of the act of March 9th, 1896, tendered the secretary of state an authenticated copy of its Virginia charter to be filed in his office, and offered to pay said sec-

retary of state $13 fees for filing same. The secretary of state declined to file said copy in his office for the reasons stated in his return.

Section 8 of article IX. of the Constitution provides: "The General Assembly shall not grant to any foreign corporation or association a license to build, operate or lease any railroad in this State; but in all cases where a railroad is to be built or operated, or is now being operated, in this State, and the same shall be partly in this State and partly in another State, or in other States, the owners or projectors thereof shall first become incorporated under the laws of this State; nor shall any foreign corporation or association lease or operate any railroad in this State, or purchase the same, or any interest therein. Consolidation of any railroad lines and corporations in this State with others shall be allowed only where the consolidated company shall become a domestic corporation of this State. No general or special law shall be passed for the benefit of any foreign corporation operating a railroad under any existing license of this State, or under an existing lease; and no grant of any right or privilege, and no exemption from any burden, shall be made to any such foreign corporation, except upon the condition that the owners or stockholders thereof shall first organize a corporation in this State under the laws thereof, and shall thereafter operate and manage the same, and the business thereof, under said domestic charter." The *first section* of the act of March 9th, 1896, entitled "An act to provide the manner in which railroad companies incorporated under the laws of other States or countries may become incorporated in this State," provides as follows: "That each and every railroad company, or railroad corporation, created or organized under or by virtue of any government other than that of this State, desiring to own property, or carry on business, or exercise any corporate franchise, in this State, of any kind whatsoever, shall first file, in the office of the secretary of state, a copy of its charter, paying therefor such fees as may be required by law,

and cause a copy of such charter to be recorded in the office
of the register of mesne conveyance, or clerk of court of
common pleas, in such county in which such company or
corporation desires or proposes to carry on its business, or
to acquire or own property. Such copy of the charter shall
be authenticated in the manner directed by law for the au-
thentication of the statutes of the State or country under
whose laws such corporation is chartered or organized."
The *third section* of said act provides that when any foreign
corporation complies with the requirements of said act, it
shall, *ipso facto*, become a domestic corporation, and shall
enjoy the rights and be subject to the liabilities of domestic
corporations, and shall be subject to the jurisdiction of this
State as fully as if it were originally created under the laws
of this State.

The duty imposed upon the secretary of state of filing
an authenticated copy of the charter granted by another
State to a railroad under the aforesaid act is ministerial,
and but two questions are before the Court for consideration: First. Is the act of the legislature unconstitutional?
Second. If not, has the relator complied with the terms of
said act? As the legislature is invested with general
authority to enact such laws as do not violate the provi-
sions of the Constitution, its action is presumed to be con-
stitutional until it is made to appear beyond a reasonable
doubt that the act in question violates some provision of
the State or Federal Constitution. When such reasonable
doubt arises, it should be solved in favor of the legislative
authority. What was the *intention* of the framers
of the Constitution, in adopting section 8 of article
IX.? The main object was to require foreign rail-
road companies operating or seeking to operate railroads in
this State to be placed on the same footing with domestic
corporations, as to their rights and liabilities under the
jurisdiction of the State Courts. The mode by which for-
eign corporations might become domestic corporations was
left to the legislature, which could either require an appli-

cation for a charter under the laws of this State or could prescribe terms upon the compliance with which a foreign corporation would be *adopted* as a *domestic corporation*. In the case of *Stout* v. *Sioux City*, 8 Fed. Rep., 796, in considering a statute of the State of Nebraska, somewhat similar to the act under consideration, the Court say: "It is certainly competent for the State by its legislature to determine the mode of creating corporations within its limits, and if it sees fit to declare that a foreign corporation may become a corporation of the State by building a railroad therein, and filing a copy of its articles of incorporation with the secretary of state, I have no doubt that compliance with these terms constitute the foreign corporation a domestic corporation with respect to all of its transactions within such State." A State by its legislature may impose upon foreign corporations, which seek to come within its limits to conduct their business, the condition that they shall be subjected to the duties and obligations of domestic corporations. In short, that they shall be, when so acting within the territorial limits of the State, domestic corporations for the purpose of jurisdiction. The question whether the legislature of a State has adopted and domesticated a corporation created by another State, is in every case purely a question of legislative *intent*. 6 Thompson on Corp., section 7890; Murfree on Foreign Corp., section 455. It was competent for the legislature of this State to provide by the act under consideration for the adoption of foreign corporations as domestic corporations, without violating the section of the Constitution above quoted. The title of the act under consideration, and the *third* section thereof, clearly shows that such was the *intention* of the legislature. Under the *third* section of said act, a foreign corporation complying with the provisions of said act, *ipso facto*, becomes a domestic corporation, enjoying the rights and subject to the liabilities of domestic corporations, "as fully as if it were originally created under the laws of this State." The act is a general law, relating to foreign railroad cor-

porations *as a class.*  It grants no special rights or privileges, and does not exempt foreign corporations from any burden.  We conclude, that the act entitled "An act to provide the manner in which railroad companies incorporated under the laws of other States or countries may become incorporated in this State," Approved March 9th, 1896, is not repugnant to the provisions of section 8, article IX., of the Constitution of this State.

Has the relator complied with the terms of said act?  The act provides that the foreign corporation shall pay the secretary of state for filing a copy of its charter, "such fees as may be required by law."  As this act makes no further reference to said fees, the respondent contends that he is entitled to the fees as provided under the ninth section of an act entitled "An act to provide for the formation of certain corporations, and to define the powers thereof," approved March 9th, 1896.  Under this last mentioned act, a corporation can only be created by a board of corporators applying for and obtaining a charter from this State.  The ninth section of said act provides for a *charter fee*, graded according to the amount of the capital stock of the charter granted by this State.  The two acts relate to different subjects, and impose different duties upon the secretary of state.  It is stated in the relator's petition that the capital stock of the Southern Railway Company exceeds $300,000,000.  It would be unreasonable to suppose that the legislature intended to exact from foreign corporations several thousand dollars as fees to the secretary of state for the mere filing in his office of a copy of the charter granted by another State, in order to domesticate such foreign corporation.  Such would be the case if respondent's contention be sustained.  Fees are fixed and regulated by statute for *services to be performed.*  The legislature has failed to provide for and fix the amount of the fees claimed by the respondent.

We conclude that the relator, the Southern Railway Com-

pany, has complied with the terms of the statute, and the relator's petition for a writ of mandamus is granted.