**SOUTHERN RY. CO. v. QUERY et al.,
South Carolina Tax Commission.**

District Court, E. D. South Carolina.
March 31, 1927.

On Rehearing June 27, 1927.

No. 410.

**1. Courts ⬅314—Domestication of railroad corporation did not deprive it of right to invoke federal courts' jurisdiction on ground of diversity of citizenship.**

Domestication of railroad corporation under state law did not deprive it of the right to invoke jurisdiction of federal courts on ground of diversity of citizenship.

**2. Courts ⬅299(1)—Federal court's jurisdiction must be determined according to averments of bill.**

Question of federal court's jurisdiction on ground that suit arises under Constitution of United States must be determined according to averments of the bill.

**3. Courts ⬅101—Application for interlocutory injunction involving validity of administrative order of state tax commission requires hearing before 3 judges (Judicial Code, § 266, as amended by Act Feb. 13, 1925, § 1 [28 USCA § 380]).**

Application for interlocutory injunction in case where administrative order of a state tax commission is attacked as unconstitutional should be heard before three judges in accordance with Judicial Code, § 266, as amended by Act Feb. 13, 1925, § 1 (28 USCA § 380 [Comp. St. § 1243]).

**4. Courts ⬅262(2)—Federal court of equity may not enjoin collection of state tax if there is other remedy at law.**

In order to warrant injunction by federal court of equity against state tax, it is not sufficient to show that tax is illegal or unconstitutional, but it must appear that there is no remedy by ordinary processes of law or that case falls under some recognized head of equity jurisprudence.

**5. Courts ⬅262(2)—Remedy at law, to defeat federal jurisdiction in equity to enjoin state tax, must be complete.**

Remedy at law, in order to preclude jurisdiction of federal court of equity to enjoin collection of state taxes, must be plain, full, and complete, and, where remedy at law is doubtful, taxpayer need not speculate as to what the decision of court of law will be, whether state or federal, but is entitled to injunction.

**6. Taxation ⬅611(9)—Railroad held to have made sufficient prima facie case on application for interlocutory injunction against collection of state income tax.**

Interstate railroad, suing to recover additional income tax assessed by state, held to have made a prima facie case as to illegality of the assessments, provided other essentials necessary to interlocutory injunction were shown.

**7. Constitutional law ⬅284(2)—Failure to give notice and opportunity to be heard before assessing state income tax held not denial of due process (Income Tax Act S. C. 1922).**

Failure to give notice and opportunity to be heard before taxes were assessed under Income Tax Act S. C. 1922 (32 St. at Large, p. 896), held not to constitute taking of property without due process of law.

**8. Taxation ⬅608(12)—Showing that assessment of state income tax creates cloud on title constitutes ground for injunctive relief, absent remedy at law (Income Tax Acts S. C. 1922, 1926).**

Railroad, seeking to recover additional income tax assessed by state, held to have shown ground for exercise of equity powers of the federal court to enjoin such tax, provided there is no adequate remedy at law, in that the action of tax commission would create a cloud upon the title under provisions of Income Tax Act S. C. 1922 (32 St. at Large, p. 896), and Income Tax Act S. C. 1926 (35 St. at Large, p. 1) authorizing levy on property within state which became liens thereon.

**9. Taxation ⬅608(12)—Federal court will not enjoin collection of state tax creating cloud on title, if cloud can be removed by payment under protest.**

If railroad can remove cloud on title occasioned by assessment of state income tax by payment of taxes on protest, there exists an adequate remedy at law, and injunction will not issue by federal court in equity.

**10. Courts ⬅262(2)—Remedy at law, not available in federal courts, does not preclude federal jurisdiction in equity (Act S. C. March 22, 1922 [32 St. at Large, p. 1017]).**

Remedy authorized by Act S. C. March 22, 1922 (32 St. at Large, p. 1017), to compel refund of state income tax by mandamus, not being available in federal courts, is not such adequate remedy at law as precludes federal jurisdiction in equity.

**11. Courts ⬅265—Federal courts may not issue mandamus as an original proceeding.**

Federal courts have no power to issue writ of mandamus as an original proceeding.

**12. Courts ⬅262(2)—Remedy by proceedings unknown in federal courts is "inadequate" as affects federal jurisdiction in equity.**

In order to prevent a court of equity in federal courts from assuming jurisdiction in a proper case, remedy at law must be available in federal courts, and, where machinery provided by act creating remedy is unknown to federal courts, the remedy is inadequate.

**13. Courts ⬅365(1)—State court decisions cannot define equity jurisdiction of federal court.**

Decisions of state Supreme Court cannot define jurisdiction of equity of federal court.

**14. Courts ⬅371(6)—Right under state law to recover illegal taxes may be enforced in federal court if jurisdictional elements exist.**

Right given by state law to recover illegal taxes paid to state under protest by ordinary

action at law is one which can be enforced in federal court if elements of federal jurisdiction are present.

**15. Evidence ⬤➾65—Persons are conclusively presumed to know law.**

Persons are conclusively presumed to know the law, and complaint cannot be made because person did not know of legal rights until shortly before institution of suit.

**16. Courts ⬤➾281—Federal court may entertain action authorized in state court if other jurisdictional elements are present.**

If state creates a cause of action and provides that party to enforce cause of action may bring an ordinary action at law in state court of general jurisdiction, federal District Court may entertain such action if other requisites of federal jurisdiction are present.

**17. Courts ⬤➾262(2)—Remedy for recovery of illegal taxes, not providing for interest, would not be complete remedy at law as affecting right to injunctive relief.**

A remedy for recovery of taxes illegally assessed, which does not provide for reasonable amount of interest for time of its detention, would not be a complete remedy at law, so as to defeat federal jurisdiction in equity to grant injunctive relief.

On Rehearing.

**18. Courts ⬤➾262(2)—State law authorizing suit against state in state court to recover illegal taxes does not provide remedy at law defeating federal jurisdiction in equity (Income Tax Act S. C. 1926, § 32).**

Remedy provided by Income Tax Act S. C. 1926, § 32 (35 St. at Large, p. 22), for recovery of taxes illegally assessed, *held* not to provide such adequate remedy at law as defeated federal jurisdiction in equity, in that remedy therein provided was a suit against the state, confined to the court of common pleas and not available in federal court.

**19. Courts ⬤➾303(2)—Suit to compel state to repay taxes illegally collected is suit against state.**

Suit to compel state to perform its obligation to repay, from state treasury, taxes illegally collected, is a suit against the state.

**20. Courts ⬤➾303(1)—State's waiver of immunity and consent to be sued in its own courts is not consent to be sued in federal court (Const. Amend. 11).**

Waiver by state of its immunity from suit, under Const. Amend. 11, and consent to be sued in its own courts, does not constitute a consent to be sued in federal court.

**21. Courts ⬤➾262(2)—Test of federal jurisdiction in equity is inadequacy of remedy on law side of that court, not inadequacy of remedies in state courts.**

The test of equity jurisdiction in federal court is the inadequacy of remedy on law side of that court, not the inadequacy of remedies afforded by state courts; hence remedy at law in state court which is not available in federal court is not sufficient to defeat federal jurisdiction in equity.

**22. Equity ⬤➾43—Equity will assume jurisdiction where remedy at law is doubtful.**

Wherever remedy at law is doubtful, equity will assume jurisdiction.

**23. Courts ⬤➾262(3)—Members of South Carolina tax commission cannot be sued personally to recover taxes illegally assessed so as to constitute remedy at law defeating federal jurisdiction in equity (Income Tax Act S. C. 1926, § 32).**

In view of Income Tax Act S. C. 1926, § 32 (35 St. at Large, p. 22), expressly providing for recovery of taxes illegally assessed by suit against tax commission, there is no right of action against members of tax commission individually and personally that would constitute adequate remedy at law sufficient to defeat federal jurisdiction in equity to grant injunctive relief.

In Equity. Suit by the Southern Railway Company against W. G. Query and others, as members of and constituting the South Carolina Tax Commission. On application for an interlocutory injunction. Interlocutory injunction granted.

S. R. Prince and John B. Hyde, both of Washington, D. C., F. G. Tompkins, of Columbia, S. C., and Nath B. Barnwell, of Charleston, S. C., for plaintiff.

J. Fraser Lyon, of Columbia, S. C., J. M. Daniel, Atty. Gen., of South Carolina, and Cordie Page, Asst. Atty. Gen., of South Carolina, for defendants.

Before PARKER, Circuit Judge, and WATKINS and ERNEST F. COCHRAN, District Judges.

ERNEST F. COCHRAN, District Judge. The plaintiff brought this suit against the South Carolina tax commission to enjoin the collection of additional income tax assessed by the commission against the plaintiff for the years 1921 to 1925, inclusive. A restraining order was granted pending the hearing of an application for an interlocutory injunction before three judges, as required by section 266 of the Judicial Code (28 USCA § 380 [Comp. St. § 1243]). Thereupon a court composed of three judges convened and heard the application for an interlocutory injunction upon the bill of complaint, return, and answer of the defendants, and a number of affidavits of expert accountants both on behalf of the plaintiff and of the defendants, and the propriety of granting the interlocutory injunction is now to be decided.

The amount of the tax assessed, with interest, is in excess of $350,000, and the income upon which it is assessed is admittedly income derived from interstate commerce.

No question is involved as to the income of the railway company on purely intrastate business. That income has been determined, and the tax paid thereon is satisfactory. The tax involved in this suit is additional tax levied upon the income derived from interstate commerce which the state tax commission contends was not correctly computed for the years involved.

The facts with respect to the original taxation of the income derived from interstate commerce in South Carolina for the years involved are as follows:

In 1922, the Legislature of South Carolina passed an act known as the Income Tax Act of 1922 (Acts of the General Assembly of South Carolina 1922, p. 896). This act made a radical departure from previous income tax acts. The nature and purposes of this act and its proper construction and interpretation are admirably and comprehensively set forth by Mr. Justice Marion of the Supreme Court of South Carolina in Santee Mills v. Query et al., 122 S. C. 158, 115 S. E. 202; and it is unnecessary to restate them here. It is sufficient for the purposes of this case to say that the act as construed and interpreted in that case contemplates taxing the income of persons and corporations in this state at a rate equal to one-third of the amount required to be paid to the United States government on net taxable income; the effect of the act being to adopt for the state of South Carolina the federal income tax law, namely, the Act of Congress approved November 23, 1921 (42 Stat. 227 [Comp. St. §§ 6336⅛a–6336⅛zzz]), and the department regulations thereunder, with a tax rate equal to one-third of that imposed by the federal government.

For the year 1921, the company's business showed no net income, but a deficit, for the system taken as a whole, and no income on interstate business was returned for taxation in South Carolina for that year. For 1922, the tax was arrived at by determining the percentage of the mileage operated by the railway in the state of South Carolina in comparison with its total mileage and allocating to the state of South Carolina a like percentage of the net income as returned to the federal government in the railway company's consolidated return. For the years 1923, 1924, and 1925, the income was computed on the ton mileage basis; that is to say, the interstate freight revenue as a whole was determined, together with the actual ton miles of interstate freight traffic, the total ton miles of interstate freight was then divided into the total interstate freight revenue, and the average rate per ton per mile was thus secured. The number of ton miles of interstate freight in the state was then multiplied by the average rate per ton per mile for the system as a whole, and the result thus obtained was reported as the income from interstate traffic taxable by the state of South Carolina.

The state tax commission, in reassessing the income, has ascertained the interstate revenue by computing the revenue earned on interstate traffic actually moving within the state of South Carolina. The commission has ascertained the ton miles of traffic actually moving within the state, and has multiplied this by the revenue per ton mile, as determined for the system in the year 1917, plus the increase in the revenue per ton mile since 1917, and deducting therefrom the expenses actually incurred in the state of South Carolina in connection with interstate traffic. The railway contends that the method pursued by the commission is unfair, in that it fails to take account of the general expenses of the railway, such as cost of administration, maintenance of terminals, etc., in that the nature of the traffic in South Carolina has greatly changed since 1917 so that the revenue derived from the traffic during the years in controversy cannot be ascertained by reference to the 1917 figures, and in that the commission, in its computations, has ignored interest and discount on bonds on certain lines leased within the state of South Carolina. The argument as to the methods adopted is lengthy and complicated, but it is established that the railway system as a whole, during the year 1921, showed a deficit instead of a taxable net income, but that the method adopted by the state tax commission shows income earned within the state of South Carolina of $835,326.35, subject to tax amounting to $27,844.21. In 1922, when the company had a net income from the whole system of $857,249.16, the income assessed by the tax commission as being taxable by South Carolina was $2,698,539.66, upon which a tax was assessed of $112,439.15. While the discrepancy for the years 1923, 1924, and 1925 is not so startling, it shows that the revenue assessed as taxable by the tax commission is large in proportion to the mileage of the railway company within the state of South Carolina.

The contention of the railway company is that the net income on interstate commerce should be determined on the ton mileage basis, and, if this is adopted, no additional tax whatever is due by the company. The company makes the further contention that, if

the ton mileage basis be not adopted, then the income should be apportioned on the actual mileage basis, as approved in Pittsburgh, C., C. & St. L. R. Co. v. Baccus, 154 U. S. 421, 14 S. Ct. 1114, 38 L. Ed. 1031, and that, if this mode of division be adopted, the company would be liable for only about $20,-000 additional tax. It contends that the assessment made by the tax commission violates the Constitution of the United States (1) in that it operates as a burden upon interstate commerce; (2) in that it denies to the railway company the equal protection of the laws, by taxing income from property within the state on the basis of income earned without the state, whereas other corporations doing an interstate business in South Carolina are not so taxed; and (3) in that the assessment was made without notice, and therefore violates the due process clause of the Fourteenth Amendment.

[1] At the threshold, we are met with the objection on the part of the defendants that this court has no jurisdiction because it is alleged the plaintiff has become domesticated under the laws of South Carolina and there is therefore no diversity of citizenship. The constitutional provisions and acts of the Legislature of South Carolina under which the plaintiff became domesticated and the nature of its domestication are fully set forth in State ex rel. Southern R. Co. v. Tompkins, 48 S. C. 49, 25 S. E. 982. It is unnecessary to enter into any extensive discussion of this point. We deem the matter settled by the decisions of the Supreme Court of the state and of the United States that the domestication of the Southern Railway Company under the laws of South Carolina does not deprive it of the right to invoke the jurisdiction of the federal courts on the ground of diversity of citizenship. Southern R. Co. v. Allison, 190 U. S. 326, 23 S. Ct. 713, 47 L. Ed. 1078; Wilson v. Southern R. Co., 64 S. C. 162, 36 S. E. 701, 41 S. E. 971; Calvert v. Southern R. Co., 64 S. C. 139, 36 S. E. 750, 41 S. E. 963.

But, even if it be considered that the domestication of the Southern Railway under the South Carolina statutes removes the requisite diversity of citizenship, nevertheless the United States court still has jurisdiction in the present case. Section 24 of the Judicial Code (28 USCA § 41 [Comp. St. § 991]) provides that the District Court shall have jurisdiction of all suits of a civil nature at common law or in equity where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and arises under the Constitution or laws of the United States. It is unnecessary to cite the numerous decisions which show that the case presented by this bill is a case arising under the Constitution and laws of the United States, and, the jurisdictional amount being present, this court has jurisdiction of the cause.

[2] The next question presented is whether the application for an interlocutory injunction should be heard by the District Judge alone, or by three judges, pursuant to the provisions of section 266 of the Judicial Code. The defendants allege that the claim that the suit arises under the Constitution of the United States is not even colorable, but is wholly pretentious and fictitious, and that they do not claim the right to lay any burden upon interstate commerce either directly or indirectly, and have not considered the statutes of South Carolina as allowing them to place any burden whatsoever upon interstate commerce. But we are of opinion that this question must be determined according to the averments of the bill. Hart v. B. F. Keith Vaudeville Exchange, 262 U. S. 271, 43 S. Ct. 540, 67 L. Ed. 977; Great Northern R. Co. v. Galbreath Cattle Co., 271 U. S. 99, 46 S. Ct. 439, 70 L. Ed. 854.

[3] It has been suggested further, however, that the application need not be heard before three judges under section 266 of the Code as amended (Act of Feb. 13, 1925), because the bill does not allege the unconstitutionality of any statute of the state, but merely alleges that the order of the administrative board— that is, the Tax Commission—is in violation of constitutional rights. Whatever doubts there may have been as to whether or not it is necessary for three judges to hear an application for interlocutory injunction when an administrative order is attacked as unconstitutional, are authoritatively set at rest by the Supreme Court. In passing upon this question and the effect of the amendment of 1913 (37 Stat. 1013), that court held that the amendment was introduced to prevent any question that such orders were within the section and was superfluous as the original statute covered them, but that it was plainly intended to enlarge, not to restrict, the law, and that, where an administrative order is attacked as unconstitutional, the case is within the purview of section 266 as amended. Oklahoma Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659. We hold therefore that section 266 as amended applies to this case and the application for the interlocutory injunction should be heard before three judges as therein provided.

[4, 5] The importance to the state of the

power to collect its tax promptly and without interference by injunctive process is evident. In considering whether a federal court of equity should enjoin such a tax, there are certain principles which have been firmly established by the Supreme Court of the United States. It is not sufficient for the party to show that the tax is illegal or unconstitutional; but it must appear that he has no other remedy by the ordinary processes of the law or that the case falls under some recognized head of equity jurisprudence; and, although the assessment or levy of such a tax may create a cloud upon title and thus bring the case within the power of a court of equity, nevertheless, if he has an adequate remedy at law by paying the tax under protest and recovering the same in an action at law, an injunction should not issue. But it is also settled by the decisions of the Supreme Court that the remedy at law must be adequate. It must be plain, full, and complete, and, where the remedy at law is doubtful, the taxpayer is not compelled to speculate as to what the decision of the court of law will be, whether state or federal, but is entitled to an injunction. We will cite only a few of the decisions which support these propositions. The State R. R. Tax Cases, 92 U. S. 575, 614, 23 L. Ed. 663; Allen v. Pullman Palace Car Co., 139 U. S. 658, 661, 11 S. Ct. 682, 35 L. Ed. 303; Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Pittsburgh, etc., Ry. Co. v. Board of Public Works, 172 U. S. 32, 19 S. Ct. 90, 43 L. Ed. 354; Ark. Bldg. & Loan Association v. Madden, 175 U. S. 269, 20 S. Ct. 119, 44 L. Ed. 159; Indiana Mfg. Co. v. Koehne, 188 U. S. 681, 23 S. Ct. 452, 47 L. Ed. 651; Union Pacific R. Co. v. Board of Commissioners, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Wallace v. Hines, 253 U. S. 66, 40 S. Ct. 435, 64 L. Ed. 782; Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 41 S. Ct. 272, 65 L. Ed. 638; Keokuk & Hamilton Bridge Co. v. Salm et al., 258 U. S. 122, 125, 42 S. Ct. 207, 66 L. Ed. 496; Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051.

[6] As to the illegality of the assessments, we think that the plaintiff has at least made a sufficient prima facie case in that respect, provided the other essentials necessary to maintain an injunction are sustained. While a vast mass of figures has been adduced by both parties in the affidavits and pleadings to sustain their respective contentions, and the questions involved are complicated and not free from difficulty, nevertheless, upon an application for an interlocutory injunction we

think the showing of the plaintiff is sufficient. Without attempting any full discussion of the evidence upon this question which would unduly amplify this opinion, we may say that the evidence tends very strongly to show that the tax or certainly a large portion of it, was assessed on an improper basis and constitutes a burden upon interstate commerce and denies to the plaintiff the equal protection of the laws. During the course of the argument on this motion, the suggestion was made that upon a full hearing, where books could be produced, and witnesses examined and cross-examined, the result might be different. Such may be the case. Our view of course is necessarily confined to the matter as presented now.

[7] As to the plaintiff's contention that the assessment of the taxes without notice is unconstitutional, in that it deprives it of its property without due process of law, we do not think that it can be sustained. As a matter of fact, the plaintiff did have notice and an opportunity to be heard upon a large amount of the taxes. It is true that the final assessment made on October 12, 1926, increased the assessment by a substantial amount. The assessment was not made, as we shall hereafter show, under the Tax Act of 1926 (35 St. at Large S. C. p. 1), which requires notice and hearing, but under the provisions of the Tax Act of 1922, which did not make such requirements. Assuming that there was a failure to give notice and an opportunity to be heard before the taxes were assessed, we do not think that would constitute taking of plaintiff's property without due process of law. But in any event, if the plaintiff has an adequate remedy at law, as we shall hereafter show, then the question of due process of law can be presented and determined in that action, and plaintiff's rights there fully protected.

[8, 9] We also think that the plaintiff has shown a ground for the exercise of the equity powers of the court (provided there is no adequate remedy at law), in that the action of the tax commission would create a cloud upon title. The provisions of the Tax Act of 1922 for the assessment and collection of taxes are retained, and not repealed by the Tax Act of 1926, and under those provisions the tax commission may cause the assessments to be levied upon all the property of the plaintiff in the state which become liens upon its real estate, and would therefore cast a cloud upon its title. If, however, it can remove that cloud by payment of the taxes under protest and recovery, there exists then an adequate remedy at law, and the injunc-

tion should be denied. So the real question in the case is whether such a remedy has been provided by the laws of the state.

[10-12] The defendants contend that Act No. 571 of the General Assembly of South Carolina (32 St. at Large, p. 1017), entitled "An act to authorize and empower the South Carolina tax commission to order an abatement or refund of taxes in certain cases, * * * approved the 22nd day of March, A. D. 1922," gives the plaintiff a complete and adequate remedy at law. It is provided in that act that, whenever it shall appear to the satisfaction of the South Carolina tax commission that any tax has been paid under an erroneous, improper, or illegal assessment, such commission shall have the power and authority to order any officer having custody of the taxes so erroneously, improperly, or illegally paid, to refund the same, etc. Section 4 of the same act provides that it shall be in addition to any remedies for the abatement or refund of taxes that may now be provided by law. The Supreme Court of South Carolina, in Bank of Johnston v. Prince, 136 S. C. 439, 134 S. E. 387, held that the remedy was concurrent with other remedies for abatement of taxes and that mandamus would lie to compel the county officers to obey an order of the tax commission directing a refund. The view of the defendants is that, if the plaintiff can show that the tax has been illegally or improperly assessed and the tax commission should refuse to order its refund, it has its remedy at law by mandamus to compel the defendants to issue an order requiring refund. But we do not think that this remedy is adequate. In the first place, it is not available in the federal courts, because it is well settled that the federal courts have no power to issue a writ of mandamus as an original proceeding. Covington & Cincinnati Bridge Co. v. Hager, 203 U. S. 109, 27 S. Ct. 24, 51 L. Ed. 111. In order to prevent a court of equity in the federal courts from assuming jurisdiction in a proper case, the remedy at law must be available in the federal courts, and, where the machinery provided by the act is unknown to the federal courts, the remedy is inadequate. This is illustrated by the decision of the Supreme Court in Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878. In that case, the remedy provided was by writ of error issuing from the Supreme Court of the state to the tax body levying the assessment, and it was held that such writ of error could be sued out only from the state Supreme Court and was not available in the federal courts.

Aside from this, however, the remedy under Act No. 571, in so far as income taxes are concerned, has been expressly abolished by the Income Tax Act of 1926. Section 32 of the latter act, after providing for an action for the recovery of taxes, explicitly says that there shall be no other remedy in any case of illegal or wrongful collection of income taxes or attempt to collect such taxes than that provided in the act. The remedy provided in Act No. 571, in so far as it concerns income taxes, is therefore not available in any event.

The defendants also contend, however, that a complete, plain, adequate remedy at law is provided by the Income Tax Act of 1926. This is the crucial point of the case, and for that reason we shall set forth verbatim the sections of that act relied upon by the defendants and also those sections which the plaintiff claims show that some of its objections to the effect of that act are well taken. The act was not approved by the Governor until October 12, 1926 (35 St. at Large, p. 1), the very day these taxes were assessed. The pertinent sections are as follows:

"Sec. 31. The collection of income taxes as provided in this act or in prior acts, shall not be stayed or prevented by any injunction, writ or order issued by any court or judge thereon; and no writ, order or process of any kind whatsoever staying or preventing the South Carolina tax commission from taking any step or proceeding in the assessment or collection of any income tax whether such tax is legally due or not in any case be granted by any court or the judge of any court; but in all cases whatsover the person against whom any income tax shall stand charged by the South Carolina tax commission shall be required to pay the same in such funds and moneys as the said South Carolina tax commission shall be authorized to receive by any act of the General Assembly, and thereupon shall have his remedy as is hereinafter provided.

"Sec. 32. In all cases in which any income taxes are now or shall be hereafter charged by the South Carolina tax commission against any person, and the South Carolina tax commission shall claim the payment of the taxes so charged, or shall take any step or proceeding to collect the same, the person against whom such taxes are charged, or against whom such steps or proceedings shall be taken, shall, if he conceives the same to be unjust or illegal for any cause, pay the said taxes, which shall include the penalties, notwithstanding, under protest in writing in such funds and moneys as the said South

Carolina tax commission shall be authorized to receive; and upon such payment being made the South Carolina tax commission shall pay the taxes, and penalties, if any, so collected into the state treasury as now provided by law giving notice at the time to the state treasurer that the payment was made under protest; and the person so paying said taxes may at any time within thirty days after making such payment, but not afterwards, bring an action against the South Carolina tax commission for the recovery thereof in the court of common pleas for any county having jurisdiction; and if it be determined in said action that such taxes, and penalties if any, were wrongfully or illegally collected, for any reason going to the merits, then the court before whom the case is tried shall certify of record that the same were wrongfully collected and ought to be refunded, and thereupon the South Carolina tax commission shall issue its order to the state treasurer to refund the said taxes, and penalties if any, so paid in conformity with the order of the court, which shall be paid in preference to other claims against the state treasury; there shall be no other remedy in any case of the illegal or wrongful collection of income taxes or attempt to collect such taxes than that provided in this act."

"Sec. 42. That on the passage of this act, the Income Tax Act approved the 13th day of March, 1922, as amended, is repealed to take effect January 1st, 1925.

"Sec. 43. That the Income Tax Act of 1922, and amendments thereto, which is repealed by this act shall remain in force for the assessment and collection of all taxes which have accrued or may accrue under the Income Tax Act of 1922, and amendments thereto, and for the imposition of all penalties and interests which have accrued or may accrue in relation to said act."

[13, 14] Before considering the proper construction of sections 31 and 32, it is advisable to state briefly their history. Sections 31 and 32 are copied verbatim from sections 511 and 512 of the Code of Laws of South Carolina of 1922, vol. 3 (sections 412 and 413, Code 1902; sections 460 and 461, Code 1912). The only difference between them is the substitution of the South Carolina tax commission for the county treasurer, including with the taxes paid *any penalties* which may have also been paid, and eliminating any duty in the premises to be performed by the Comptroller General. In so far as the verbiage affects the present case, the language of sections 31 and 32 of the Income Tax Act of 1926 is an exact copy of the language of sec-

tions 511 and 512 of the Civil Code 1922. Sections 511 and 512 of the Civil Code 1922 were enacted more than thirty years ago, and had been uniformly construed by the Supreme Court of South Carolina to prevent the issuance of an injunction by a state court of equity, and to give the party a plain, adequate, and complete remedy at law by payment of the taxes, under protest, and an ordinary action at law to recover the same. Western Union Tel. Co. v. Winnsboro, 71 S C. 231, 50 S. E. 870; Fleming v. Power, 77 S. C. 528, 58 S. E. 431; National Loan & Exchange Bank v. Jones, 103 S. C. 80, 87 S. E. 482. It is true that those decisions of the South Carolina Supreme Court could not define the jurisdiction in equity of this court, and we do not refer to them for that purpose. But they do show that the South Carolina statutes, namely sections 511 and 512, give to one who should pay illegal taxes under protest a right to recover by an ordinary action at law such taxes (Singer Sewing Machine v. Benedict, 229 U. S. 481, 486, 33 S. Ct. 942, 57 L. Ed. 1288), and this right is one which can be enforced in this court no less than in the state courts, if the elements of federal jurisdiction, such as diverse citizenship and the requisite amount in controversy, be present (Singer Sewing Machine v. Benedict, supra, 486 [33 S. Ct. 942]; Chicago, B. & Q. R. R. v. Osborne, 265 U. S. 14, 16, 44 S. Ct. 431, 68 L. Ed. 878). Inasmuch as it is so plain that sections 31 and 32 of the Act of 1926 were copied literally from sections 511 and 512 of the Civil Code 1922, it is difficult to see how there can be any doubt that the Supreme Court of the state would hold that the Tax Act of 1926 forbids any remedy in equity by injunction and creates a plain, adequate, and complete remedy at law by the payment of taxes and penalties, if any, under protest, and the recovery of the same by an ordinary action at law.

In view, however, of the importance of the case and the very earnest and able arguments that have been presented by both sides, we will consider the question more in detail and examine particularly each objection that has been urged to this view of the law.

In the first place, the plaintiff contends that sections 31 and 32 of the Tax Act of 1926, being a recent act and there being no decision of the Supreme Court of South Carolina construing *that* act, the remedy at law must be deemed doubtful and cites in support of this contention Union Pacific R. R. Co. v. Weld Co., 247 U. S. 282, 38 S. Ct.

510, 62 L. Ed. 1110, and Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051. In Union Pacific R. R. Co. v. Weld Co., the Supreme Court said that the controversy respecting the meaning of the new statute referred to was not without some real basis and that its solution was not free from difficulty. This case, therefore, is simply in line with all of the previous decisions of that court which hold that, where there is a substantial doubt as to the meaning of a recent statute and there is no decision of the Supreme Court of the state upon the question, the party is not bound to speculate as to what the decision will be at law and that equity will assume jurisdiction.

In Atlantic Coast Line R. Co. v. Daughton, supra, the Supreme Court, however, did use language which might seem to indicate the broad doctrine claimed by the plaintiff. But, although the language of the Supreme Court in the last-mentioned case is apparently broad enough to sustain plaintiff's contention that every recent act must be construed before the remedy at law can be deemed adequate, nevertheless we are of opinion that the Supreme Court simply intended to reaffirm their former decisions, which all hold that there must be a substantial doubt or some plausible ground for a controversy respecting the interpretation or meaning of the statute, for a number of those decisions are cited as sustaining the proposition. The cases thus cited are Dawson v. Kentucky Distilleries & Warehouse Co., 255 U. S. 288, 296, 41 S. Ct. 272, 65 L. Ed. 638; Wallace v. Hines, 253 U. S. 66, 68, 40 S. Ct. 435, 64 L. Ed. 782; Shaffer v. Carter, 252 U. S. 37, 47, 40 S. Ct. 221, 64 L. Ed. 445; Union Pacific R. Co. v. Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Davis v. Wakelee, 156 U. S. 680, 688, 15 S. Ct. 555, 39 L. Ed. 578. We do not think that the Supreme Court meant to say that in no case could a statute be drawn so plainly that it need not first be construed by the Supreme Court of the state before it could be deemed an adequate remedy at law. The more plainly a statute is drawn, the less likely it is that a controversy will arise and be presented to the state court. In addition to this, however, as we have shown above, the sections of the Code from which this statute was copied have been construed by the Supreme Court of the state, and it surely cannot be contended that, where an act is copied from a previous act which has received judicial construction by the highest court of the state, the federal court must await the construction of the re-

cent act before deeming it sufficient as a remedy at law.

There cannot be said to be any doubt but that the Supreme Court of South Carolina, if a case is presented to it involving the construction of sections 31 and 32 of the Tax Act of 1926, will feel bound under its previous decisions construing sections 511 and 512 of the Civil Code 1922 to follow those decisions and give the same construction to sections 31 and 32.

The Tax Act of 1926 was approved by the Governor on October 12, 1926, and by its terms was retroactive; section 42 thereof providing that the act should take effect on January 1, 1925. The assessments in question were made on the same date (to wit, (October 12, 1926) that the Governor approved the act. The plaintiff contends further that, conceding the act might be made retroactive, and assuming that it had constructive notice of the approval of the Governor, nevertheless that it could not know whether the assessments were under the 1922 act or the 1926 act, and that there is a serious doubt whether it can recover by virtue of the provisions of section 32 of the 1926 act taxes assessed under the act of 1922. But we do not think there is any serious doubt whatever as to the meaning of the Income Tax Act of 1926 in that respect. The Income Tax Act of 1922 and amendments thereto were by section 43 of the act of 1926, retained in force for the *assessment and collection* of taxes under the act of 1922. But sections 31 and 32 are not confined in their application to taxes assessed under the new act. Section 31 expressly says that the collection of income taxes as provided in "this act *or in prior acts*" shall not be stayed, etc. Section 32 expressly says that in all cases in which any "income taxes *are now* or shall hereafter be charged" by the South Carolina tax commission, the party may pay the same under protest and bring suit as provided in that section. It is clear, therefore, that sections 31 and 32 provide a remedy, not only to recover taxes illegally assessed under the act of 1926, but taxes illegally assessed under any prior act, including the act of 1922. It is of no consequence, therefore, whether the plaintiff knew or not that the taxes assessed against it were assessed under the act of 1922, or under any other act; for in any event the act of 1926 provides a remedy for their recovery if illegally assessed. However, the taxes accruing under the Income Tax Act of 1922 could be legally assessed only under that act and its amendments, the plaintiff

was bound to know the law, and therefore ought to have known that they were assessed under the act of 1922. The plaintiff's theory apparently is that the Tax Act of 1922, being retained in force for the assessment and collection of taxes, might be deemed to include their refundment or recovery, and that therefore no recovery at law was provided for taxes assessed under the act of 1922. But the collection of taxes is one thing and their recovery by the taxpayer is another thing. The 1922 act remained in force, so far as the *assessment and collection* of taxes under that act is concerned; but, so far as pertains to the *remedy of the taxpayer to recover* such taxes, sections 31 and 32 apply, for they expressly give the right of recovery as to all taxes, whether assessed at the time the act took effect or thereafter.

[15] The plaintiff further contends that the Tax Act of 1926 was approved by the Governor a short time prior to the institution of this suit, and that the railroad company learned of it only a day or two before the suit was actually filed. This cannot affect the matter. As a matter of fact, the plaintiff's division counsel lives in Columbia, and the fact that the act was signed and published in the papers on the day it was signed would probably have come to the notice of counsel. But, irrespective of this, persons are conclusively presumed to know the law; and the plaintiff cannot be heard to say that it did not know of its legal rights until shortly before the suit was instituted, and therefore had no legal rights.

[16] The plaintiff also claims that the act of 1926 does not afford a complete remedy, because it prescribes that the action to recover the taxes must be brought in the court of common pleas, and it is therefore argued that the remedy is not available in the federal courts, citing in support of its contention Chicago, B. & Q. R. Co. v. Osborne, supra. That case, however, does not support the broad claim made by the plaintiff. It was there held, as we have already shown, that, where the remedy provided by the state law was by writ of error to issue to the tax body from the state Supreme Court, such remedy was not available in the federal court, and therefore was not adequate. But we have been cited to no decision which holds that, where the state gives an ordinary right of action and provides that it shall be brought in its court of general jurisdiction, the federal courts, if the proper requisites of diverse citizenship or other grounds of federal jurisdiction are met, cannot entertain such an action. It was expressly held in Singer Sew-

ing Machine v. Benedict, supra, and recognized as the law in Chicago, B. & Q. R. Co. v. Osborne, supra, that such remedies are available in the federal courts. We think, therefore, that there can be no question that, if the state creates a cause of action and provides that the party, to enforce that cause of action, may bring an ordinary action at law in a state court of general jurisdiction, the federal District Court may entertain such action if the other requisites of federal jurisdiction are present. In this connection it is to be noted that a state statute could not confer jurisdiction upon the federal courts in terms. All that it could do would be to confer jurisdiction on its own courts, and the federal courts would then take jurisdiction of such ordinary actions if their own requisites of jurisdiction are present. It may be suggested that the Legislature could have provided that the action should be brought "in any court of competent jurisdiction," but, if such broad terms had been used, then magistrates' courts would have jurisdiction of such actions up to $100, under the state law, and it may very well be that the state would be unwilling that such inferior courts should have jurisdiction of questions arising in tax cases. At any rate, however, we entertain no doubt under the cases of Singer Sewing Machine v. Benedict, supra, and Chicago, B. & Q. R. Co. v. Osborne, supra, that this court would have jurisdiction of the action at law, provided for in section 32 in a proper case.

The plaintiff contends that section 32 is inadequate because it provides for a recovery when the taxes are found to be wrongfully or illegally collected "for any reason going to the merits." It insists that the tax commission might refuse to issue its order or the state treasurer might refuse to pay the claim, on the ground that the decision of the court was not upon the merits. The plaintiff also suggests that the court might decide the case upon a default or through some technical matter of procedure, and that it would then be without remedy. So far as the action of the state treasurer and the tax commission in this respect are concerned, their duties are merely ministerial. When the court has determined for any reason going to the merits that the taxes were wrongfully or illegally collected, and shall certify of record that the same were wrongfully collected and ought to be refunded, neither the tax commission nor the state treasurer has any discretion in the matter, but it is their duty forthwith to refund the tax. No discretion is vested in the tax commission or the state treasurer in any way to review the action of the court. As to

the suggestion that the court might determine the matter, not upon the merits but upon a default or for some technicality, we do not consider that this deprives the party of an adequate remedy. Whether there be a default or a trial, it is always in the power of the plaintiff to have a hearing of the case upon the merits. A party surely is not entitled to ask for any more than a hearing and decision upon the merits. If the Legislature had provided in general terms as to all actions that the court should give decisions upon the merits and not upon mere technicalities, this general law would not be deemed to render all actions of law incomplete or inadequate. Such acts have been frequently upheld and applied, both in state and federal courts, and section 32 in that respect merely applies this general principle to the specific case of an action for recovery of income taxes illegally assessed. A party cannot claim that the remedy at law is inadequate simply because the remedy confines him to recovery upon the merits and not upon technicalities. What right has he to demand anything more than the merits of his case deserve? This seems to us to be the plain meaning of this statute, concerning which there can be no substantial doubt. It must be borne in mind also that section 512 of the Code, which has already been referred to, contains this exact language, and the Supreme Court of South Carolina in the cases cited held that the remedy was adequate at law and that an ordinary action would lie. Evidently that court considered that, if the party had a grievance, he could have his claim fully satisfied by an ordinary action at law. In the case of Telegraph Co. v. Town of Winnsboro, 71 S. C. 231, 235, 50 S. E. 870, 872, the Supreme Court of South Carolina, in considering this very section (formerly section 413 of the Code of South Carolina of 1902, now section 512 of the 1922 Code) used the following language:

"This law may sometimes seem harsh and oppressive, and in some cases it may work hardship; but the aggrieved taxpayer is not left remediless. Section 413 comes to his relief by providing that, 'if he conceives the tax to be unjust or illegal for any cause,' although he must pay the tax, he may do so 'under protest,' and then in due time he may 'bring an action against the county treasurer for the recovery thereof,' *and if he prevail in such proceeding*" (italics ours) "'by showing that the tax was 'wrongfully or illegally collected,' he shall have his tax refunded."

In view of this language and the other South Carolina decisions referred to, it cannot be doubted that, if the plaintiff in this case bring its action at law and can prevail in that proceeding by showing that the taxes were wrongfully or illegally collected, such court at law, whether a federal court or a state court, would undoubtedly give it a judgment or order that would enable it to have such taxes refunded.

The plaintiff further insists that the provision contained in section 32 is inadequate, because it does not in express terms provide for interest. In a number of decisions by the Supreme Court of the United States, it was held that, where state statutes made a provision by which the aggrieved taxpayer could recover at law the taxes illegally exacted, such would be a complete remedy, and equity would not take jurisdiction. Union Pacific R. R. Co. v. Weld County, 247 U. S. 282, 285, 38 S. Ct. 510, 62 L. Ed. 1110, and cases there cited; Singer Sewing Machine v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288, and cases there cited. In the statutes in question in these cases there was apparently no express provision for the repayment of interest on the amount illegally exacted. But it may be said that the point of interest was not directly presented in those cases, and therefore the decisions in that respect are not conclusive, and to this view we are inclined to agree.

[17] Whatever may be said as to those views which were entertained in remote times respecting interest, considering such exactions in all cases usurious, or illegal, if not positively sinful, yet in modern times such archaic notions have long since been abandoned. Money is now a proper subject of hire, and the habits and customs of the people and modern law all concur in recognizing that interest is a proper means of compensation for the use of money lent or wrongfully detained. A sum of money to-day is worth more than exactly the same sum next month or next year, and we cannot ignore the fact that to take a man's money to-day and return him exactly the same sum at a later period does not afford full compensation for the wrong that has been done him. We think, therefore, that a remedy which does not provide for a reasonable amount of interest for the time of its detention would not be a complete remedy at law, and, if in this case we thought that the plaintiff would not be entitled in such action at law to recover interest, we would retain this bill. But we are satisfied that, although section 32 does not expressly provide for interest, nevertheless under the law of South Carolina, as decided by the Supreme Court of the state, plaintiff would

be entitled to recover interest at the legal rate of 7 per cent., which is the ordinary rate by law in this state, in the absence of express contract. Section 32, as has been pointed out more than once, is a copy of section 512 of the Code of 1922 (the same being section 461 of the Code of 1912 and section 413 of the Code of 1902).

In the case of Paris Mountain Water Co. v. Woodside, 133 S. C. 383, 131 S. E. 37, it was held by the Supreme Court of South Carolina that, in an action under section 461 of the Code of 1912 for the recovery of taxes wrongfully collected, the party would be entitled to interest at 7 per cent. from the date on which the taxes were paid. The plaintiff claims, however, that this point was not decided by the Supreme Court. The case as reported shows that the Supreme Court adopted the decree of the circuit court. The decree of the circuit court, after considering the various questions for decision, ruled in favor of the plaintiffs and against the defendants and held that the plaintiffs were entitled to judgment for the amount claimed, together with interest at 7 per cent. from the date of the payment of the taxes in question. It is true that the circuit court did not state the matter of interest as one of the questions to be decided nor enter into any discussion as to allowing interest. But it did allow interest for a long period of time, ten or twelve years, at 7 per cent., and the question of interest must have been considered and was decided by the circuit court. That decree was adopted by the Supreme Court, and the point must be therefore considered as adjudicated. In view, however, of the importance of that case in its effect upon the question involved here, we have obtained a copy of the record and the briefs of the parties therein, to ascertain whether the question of interest was properly presented to the Supreme Court. Under the practice in the Supreme Court of South Carolina (section 6 of rule 5, of Rules published in volume 1, Code 1922, p. 688), questions intended to be presented in that court are required to appear at the end of the case in the form of exceptions (corresponding to assignments of error in the federal courts), and each exception must contain a concise statement of one proposition of law which the court is asked to review. The record shows that the seventh exception alleges that the circuit court was in "error in allowing plaintiff interest on the amounts alleged to be due by virtue of excessive or wrongful taxes, section 461, under which the actions were brought, making no provision for recovery of interest in such cases." The brief for the appellant (the county officers) has a short argument to show that interest could not be allowed because the section of the Code referred to made no express provision therefor. The brief for the appellee (Paris Mountain Water Company) contains an extensive argument in support of its right to interest and cites a number of decisions, including among them several decisions of the Supreme Court of the United States. The Constitution of South Carolina of 1895, art. 5, § 8, requires the Supreme Court, in reversing or affirming a judgment or decree, to consider and decide every point made and distinctly stated in the cause and fairly arising upon the record of the case. An exception which distinctly states the point of law involved comes within this constitutional provision, and a point so presented fairly arises upon the record. Garrett v. Weinberg, 59 S. C. 162, 192, 37 S. E. 51; State v. Meares, 60 S. C. 527, 530, 39 S. E. 245. In Paris Mountain Water Co. v. Woodside, supra, the question of interest was distinctly presented by an exception and therefore arose squarely before the Supreme Court upon the record. The Supreme Court affirmed the circuit court's decree which permitted interest, and the question therefore must have been considered and decided by the Supreme Court. It is true that neither the circuit Judge nor the Supreme Court entered into any discussion of the question of interest, but that may have been because it was thought too plain for argument. It is true also that that decision was under section 461 of the Code of 1912, but section 32 of the Tax Act of 1926 is in that respect an exact copy of that section. We cannot doubt, therefore, that any court of law, federal or state, in passing upon the question as to whether the plaintiff, in suing to recover these taxes which it alleges have been illegally assessed in this case, would unhesitatingly hold that the decision in Paris Mountain Water Co. v. Woodside, supra, is binding law and give judgment for interest accordingly.

While therefore the application for the interlocutory injunction must be denied, our refusal to grant it is based solely on the ground that in our opinion the plaintiff has a plain, adequate, and complete remedy at law, and that consequently this court has no power to award an injunction.

At the hearing upon this application we understood that, in case the court decided to refuse the interlocutory injunction and the plaintiff desired to appeal, the defendants

conceded that it would be proper, to preserve the status quo, that the temporary restraining order should be continued in force pending the appeal to the Supreme Court, or at least that they did not object to its being so continued. While the motion for an interlocutory injunction will therefore be denied, the restraining order will not be dissolved for the present, and, if the plaintiff appeals to the Supreme Court, it will be continued in force pending the appeal, provided the plaintiff file a good and sufficient bond conditioned in the usual form for the payment to the defendants of the sum of $400,-000 for all damages they may sustain by reason of the restraining order, or its continuance pending the appeal in case it should finally be adjudged that the restraining order ought not to have been granted or ought not to have been continued pending the appeal, and such bond when given shall be deemed a substitute for the bond heretofore given upon the granting of the restraining order, and the plaintiff may then apply for an order canceling the last-mentioned bond.

PARKER, Circuit Judge, and WATKINS, District Judge, concur.

## On Rehearing.

ERNEST F. COCHRAN, District Judge. In the former opinion this court held that section 32 of the South Carolina Tax Act of 1926 provided an adequate remedy at law by payment under protest and recovery of the alleged illegal taxes by an action which was available in the federal courts, and therefore denied the interlocutory injunction. The plaintiff presented a petition for a rehearing upon a ground which was not considered by the court nor indeed presented at the first hearing, and a rehearing was ordered, and the court has heard the arguments of the parties thereon.

[18] The new point presented is that the remedy provided by section 32 of the South Carolina Tax Act of 1926 is a suit against the state, and such suit is confined to the court of common pleas, and is therefore not available in the federal courts. The plaintiff concedes, as was decided in the former opinion, that, if a state provides a remedy by ordinary action against individuals, and the proper requisites of federal jurisdiction exist, such action is available in the federal courts and would therefore be an adequate remedy, under the decisions of the Supreme Court in Singer Sewing Machine v. Benedict, 229 U.

S. 481, 486, 33 S. Ct. 942, 57 L. Ed. 1288, and Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 16, 44 S. Ct. 431, 68 L. Ed. 878.

The precise question therefore presented upon the rehearing is whether the remedy provided by section 32 of the Tax Act of 1926 is a suit against the state, restricted to the state courts, and therefore not available in the federal courts.

[19] There can be no doubt but that the remedy provided by section 32 is a suit against the state. The object of the suit is to compel the state to perform its obligation to repay from the state treasury taxes illegally collected, and under the decisions of the Supreme Court of the United States, such a suit is a suit against the state. Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Ex parte New York, 256 U. S. 490, 500, 501, 41 S. Ct. 588, 65 L. Ed. 1057; Murray v. Wilson Distilling Co., 213 U. S. 151, 168, 169, 29 S. Ct. 458, 53 L. Ed. 742.

[20] The Eleventh Amendment to the Constitution of the United States forbids a suit against a state, but the state may waive its immunity from suit, and, when it does waive its immunity and consents to be sued in its own courts, this does not constitute a consent to be sued in a federal court. Smith v. Reeves, 178 U. S. 436, 20 S. Ct. 919, 44 L. Ed. 1140; Chandler v. Dix, 194 U. S. 590, 24 S. Ct. 766, 48 L. Ed. 1129; Murray v. Wilson Distilling Co., 213 U. S. 151, 168, 172, 29 S. Ct. 458, 53 L. Ed. 742.

In Murray v. Wilson Distilling Co., supra, the Supreme Court used the following language: "And it is elementary that, even if a state has consented to be sued in its own courts by one of its creditors, a right would not exist in such creditor to sue the state in a court of the United States," citing Smith v. Reeves, supra, Chandler v. Dix, supra.

Section 32 of the Tax Act of 1926 provides for payment under protest, and that the aggrieved taxpayer may "bring an action against the South Carolina tax commission for the recovery thereof in the court of common pleas for any county having jurisdiction." The court of common pleas is a court of the state of South Carolina, provided for in its Constitution and laws, and by this provision in section 32 the state consented to be sued in that court, and that consent cannot be extended by implication into a consent to be sued in any other court. From the principles hereinbefore stated, it is clear that, if the plaintiff in this case should pay this tax under protest and bring an action at law in a federal court, such action would

be defeated by a plea to the jurisdiction on the ground that the state had never consented to a suit in that court.

[21] While these principles are firmly established, it is, however, equally well-settled that the test of equity jurisdiction in a federal court is the inadequacy of the remedy on the law side of that court and not the inadequacy of the remedies afforded by the state courts. In other words, if a suitor has sufficient ground to invoke the jurisdiction of a federal court of equity, a remedy at law in the state court which is not available in a federal court is not sufficient to deprive a federal equity court of jurisdiction. Smythe v. Ames, 169 U. S. 466, 516, 18 S. Ct. 418, 42 L. Ed. 819; Chicago, B. & Q. R. Co. v. Osborne, 265 U. S. 14, 16, 44 S. Ct. 431, 68 L. Ed. 878; Risty v. C., R. I. & P. R. Co., 270 U. S. 378, 388, 46 S. Ct. 236, 70 L. Ed. 641.

From the principles announced in these cases, we think it logically and inescapably follows that in the case at bar the suit authorized by section 32, being against the state and restricted to the state court, is not available in the federal courts, and therefore the plaintiff has no adequate remedy at law in the federal court, and equity should assume jurisdiction. Numerous cases have been cited which, it is asserted, are inconsistent with the decisions cited above. It is unnecessary to enter into any extended discussion of those cases. It is sufficient to say that we have examined them all very carefully, and in our opinion they are distinguishable, and are not inconsistent with the principles set forth in the cases cited above.

[22] It is true, as stated in our former opinion, that a state cannot directly confer jurisdiction upon a federal court, but the question now presented is not a question of conferring jurisdiction, but of consenting to a suit against the state, and we perceive no reason why a state cannot waive its immunity and consent to be sued in a federal court as well as in its own courts. While we think that it is plain that the remedy provided by section 32 is a suit against the state and not available in the federal courts, nevertheless, even if we assume that it is not plain, it must be conceded that it is at least doubtful whether the remedy afforded by that section is available in a federal court at law, and, wherever the remedy is doubtful at law, equity will assume jurisdiction. Davis v. Wakelee, 156 U. S. 680, 15 S. Ct. 555, 39 L. Ed. 578; Union Pac. R. Co. v. Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; Atlantic Coast Line R. Co. v. Daughton, 262 U. S. 413, 426, 43 S. Ct. 620, 67 L. Ed. 1051, and cases cited therein.

At the rehearing, the defendants' counsel made the point that, aside from the remedy afforded by section 32, the plaintiff would have the right under the common law to pay the taxes under protest and sue the members of the tax commission individually and obtain personal judgment against them, and that this would constitute an adequate remedy at law. The defendants' theory is that, even in the absence of a statute authorizing payment under protest and recovery by suit against the officer making the collection, if the tax is paid under protest, the collecting officer would thereby be put on notice, and, if the tax is illegal, then his act of retaining it would be tortious, and he would be liable personally at the common law, even though he had paid it into the state treasury. We are not prepared to hold that, even if under the South Carolina law such a remedy against the commission personally existed, it would prevent equity interfering by injunction to prevent the tortious act in the first instance. If the defendants' contention is correct, then all of those cases, federal and state (including South Carolina), where officers have been enjoined from collecting illegal taxes, were incorrectly decided; for under the defendants' theory in all cases, by the principles of the common law, a payment under protest would not be voluntary and would give a right of action against the officer and thereby provide an adequate remedy at law. But in none of those cases (and their name is legion) is there any hint or suggestion that a mere payment under protest in the absence of statutory authority, would give such a right of action against the collecting officer as would oust the equitable jurisdiction. The defendants have cited a number of decisions in support of their proposition that by payment under protest the aggrieved taxpayer might sue the collecting officer personally; but they have not cited any South Carolina decision which holds such to be the law in South Carolina, nor have they cited any decision anywhere that, in the absence of statute, a payment under protest would give the taxpayer a right to sue the collecting officer personally and thereby prevent equity from interfering by way of injunction to prevent the illegal act. The South Carolina decisions certainly give no hint or indication that such a remedy exists, or, even if it did, that it would prevent the equity jurisdiction. See Ware Shoals Mfg. Co. v. Jones, 78 S. C.

211, 58 S. E. 811; Santee Mills v. Query, 122 S. C. 158, 115 S. E. 202; Crescent Mfg. Co. v. South Carolina Tax Commission, 129 S. C. 480, 124 S. E. 761; Lancaster Cotton Mills v. South Carolina Tax Commission, 132 S. C. 466, 129 S. E. 429.

[23] But, even if it be assumed that prior to the enactment of section 32 of the Tax Act of 1926 the aggrieved taxpayer would have a right of action after payment under protest against the members of the tax commission individually and personally, although there is no South Carolina decision to that effect, it is clear that since the enactment of section 32 of that act there no longer exists any remedy against the tax commission personally; for that section expressly provides a remedy by the payment of illegal taxes under protest and a suit against the tax commission (not personally or as individuals) and a repayment from the state treasury if such suit be successful; and, furthermore, that section expressly says that *there shall be no other remedy.* It is clear that section 32 does not intend to create a personal remedy against the tax commission, and, if any such remedy existed before that section was enacted, it has been abolished by the express words of that section. The state certainly has a right to relieve the tax commission from personal responsibility by providing a remedy against the state, backed by the responsibility of the state. Burrill, Treas., v. Locomobile Co., 258 U. S. 34, 38, 42 S. Ct. 256, 66 L. Ed. 450. When the act says in express terms that there shall be no other remedy, it is difficult to see how the defendants can claim that there is another remedy. There is no decision of the Supreme Court of South Carolina which holds that under this statute the plaintiff can still maintain an action individually against the members of the tax commission and recover a personal judgment against them for money that has been paid into the state treasury. In the absence of such decision, there is, to say the least, a substantial doubt or plausible ground for controversy respecting the interpretation or meaning of this statute, and in such case, under the decisions of the Supreme Court of the United States, that we have cited above, the plaintiff is not bound to speculate and take his chances at law, but may invoke the jurisdiction of a federal court of equity.

The interlocutory injunction must therefore be granted.

PARKER, Circuit Judge, and WATKINS, District Judge, concur.